**STATE of Missouri,
Plaintiff/Respondent,**

v.

**Gregory FLENOID,
Defendant/Appellant.**

**Gregory FLENOID, Movant/Appellant,**

v.

**STATE of Missouri,
Defendant/Respondent.**

Nos. 59697, 69755.

Missouri Court of Appeals,
Eastern District,
Division Four.

Sept. 1, 1992.

Janis C. Good, Jeannie Arterburn, St. Louis, for appellant.

William L. Webster, Atty. Gen., Joan F. Edwards, Asst. Atty. Gen., Jefferson City, for respondent.

CRANE, Judge.

A jury found Gregory Flenoid guilty of the offenses of possession of a controlled substance, cocaine, in violation of § 195.-202.1 RSMo (Cum.Supp.1989) and unlawful use of a weapon in violation of § 571.030.-1(1) RSMo 1986. The trial court found Flenoid to be a persistent drug offender and a prior, persistent and class X offender and sentenced him to concurrent terms of ten years imprisonment for possession of a controlled substance and ten years imprisonment for unlawful use of a weapon. Flenoid filed a Rule 29.15 motion for post-conviction relief which was denied without an evidentiary hearing. Flenoid appeals from both the judgment of the trial court and the order of the motion court.

On his direct appeal Flenoid contends the trial court plainly erred in sentencing him as a class X offender pursuant to § 558.-019.2 RSMo (Cum.Supp.1989). He also contends the trial court erred in denying his motions to suppress physical evidence and statement, and in admitting, over objection, evidence of other crimes. He further asserts the court committed plain error when it did not sustain his objection to the use of prior convictions on cross-examination and erred in not granting his motion for a mistrial. He also contends the court plainly erred when it submitted an erroneous verdict directing instruction on the crime of unlawful use of a weapon and submitted MAI–CR3d 302.04 on reasonable doubt. In his appeal from the order of the motion

court, Flenoid asserts the motion court clearly erred in denying without an evidentiary hearing his motion for post-conviction relief for ineffective assistance of counsel. We modify the judgment of the trial court by removing the finding that defendant was a class X offender. We affirm the judgment of the trial court as so modified and affirm the order of the motion court.

### DIRECT APPEAL

The sufficiency of the evidence is not in dispute. Because the validity of the search warrant is at issue we will set out the facts adduced at the hearing on motion to suppress statements, as well as evidence adduced at trial. On October 6, 1989, St. Louis narcotics detectives Samuel Zouglas and Terry Kaelin received information from a confidential informant that cocaine was being sold and stored by Felix Frazier and others in two apartments located at 5506 and 5506A Wabada. The two apartments were located in a building owned by Flenoid's mother, Jesse Tammons Williams.

Detectives Zouglas and Kaelin conducted surveillance of the building later that afternoon and observed behavior they believed was indicative of drug trafficking. Numerous individuals entered the apartments, stayed briefly and then left the immediate area. As a result of the information they were provided and their surveillance, the detectives applied for and obtained a search warrant for the two apartments at approximately 10:00 p.m. that evening, but did not execute the search warrant at that time. One of the reasons for the delay was that the police were waiting for the informant to let them know "when it was good."

On October 11, 1989 the detectives again received information from the informant that drugs were being sold from the two apartments, and that Frazier, who resided at 5506A Wabada, was there. At approximately 10:00 p.m. that evening, the detectives returned to the building where they observed numerous individuals enter the apartments, stay a short time and then leave. The detectives then radioed other narcotics officers to assist them in executing the search warrant.

The additional officers arrived at 2:00 a.m. on October 12, 1989. The police announced their presence and purpose. When they received no response, they forced open the doors of both apartments with a battering ram. Detective Kaelin entered 5506A Wabada first and ran up a flight of stairs to the living quarters. As he entered the upstairs apartment he saw Flenoid start running through the kitchen to a back room. Detective Kaelin caught Flenoid, who then dropped a plastic bottle he had been holding in his hand. Detective Kaelin retrieved the bottle, which was labeled "Dormin," a sleeping aid often used to cut cocaine. The bottle contained forty-seven pink and clear capsules which he believed to be cocaine, a rock substance which he also believed to be cocaine, and a powder.

The detective then handcuffed Flenoid, advised him of his rights and searched him. As a result of the search, Detective Kaelin found a loaded .25 caliber automatic pistol concealed in Flenoid's right rear pants pocket, a beeper and $122 in currency. He arrested Flenoid who was taken to the police station and again advised of his rights. During booking Flenoid again was advised of his rights. He admitted to Detective Kaelin that the plastic bottle he dropped contained drugs. He claimed the drugs belonged to Felix Frazier who had just left the residence before the police arrived and that he was merely selling the drugs for Frazier. Laboratory tests revealed the capsules contained 4.42 grams of cocaine and the rock substance was crack with a cocaine base.

■ In his first point Flenoid asserts the trial court plainly erred by finding him to be a class X offender. The state agrees that the trial court erred in making this finding.

Section 558.019 RSMo (Cum.Supp.1989) provides minimum prison terms for class X offenders and others if a defendant has at least one prior felony conviction and has served 120 days or more in the Department of Corrections. This section defines a class X offender as one who has previously pleaded guilty or been found guilty of three felonies committed at different times. A class X offender is required to serve a

minimum prison term of eighty percent of his sentence.

However, the minimum term provisions of § 558.019 apply only to class A and B felonies committed under certain chapters of Missouri statutes and dangerous felonies as defined in § 556.061(8) RSMo (Cum. Supp.1989). Flenoid was not convicted of either a class A or B felony or a dangerous felony. Possession of a controlled substance is a class C felony and unlawful use of a weapon is a class D felony. Neither conviction is defined as a dangerous felony under § 556.061(8). Flenoid's sentence for possession of a controlled substance was enhanced under § 195.285 to a term of years authorized for a class A felony. However, only the sentence was enhanced to a term authorized for a class A felony under that section; the underlying conviction was not enhanced to a class A felony. Flenoid's possession conviction remained a class C felony which was not covered by the minimum term provisions for class X offenders found in § 558.019.

Accordingly, the trial court plainly erred by finding Flenoid to be a class X offender. Under Rule 30.23 we may finally dispose of a case unless justice otherwise requires. Because the finding affects only the mandatory minimum time to be served and not the sentence imposed, we may modify the judgment by removing the finding that Flenoid is a class X offender and do so.

In his second point, Flenoid challenges the admission of the pistol and the cocaine seized by the police and his post-arrest statement. Flenoid asserts both the physical evidence and the statement are inadmissible fruits of an unlawful search based on an invalid warrant.

 Before we reach the merits of this point, we must first consider whether these contentions have been properly preserved for our review. Flenoid filed pre-trial motions to suppress the pistol, the cocaine and his statement. In order to attack the validity of a search or the voluntariness of a statement and the admissibility of the fruits of that search or of the statement, a defendant must have kept the questions alive at trial by asserting timely objections to the admission of such evidence and by raising the matter in his motion for a new trial. *State v. Anderson,* 698 S.W.2d 849, 851 (Mo. banc 1985).

Flenoid did not object to the introduction of his post-arrest statement at trial. That issue is thus not preserved for appeal. Flenoid seeks our plain error review but has not included in his brief any legal authority or discussion relating to any ground raised in his motion to suppress his statement. Absent any argument or authority we deem the issue waived or abandoned. *State v. Meadows,* 785 S.W.2d 635, 641 (Mo.App.1990); *State v. Harris,* 670 S.W.2d 73, 81 (Mo.App.1984). The entire argument focuses on the legality of the search.

Even in his motion to suppress Flenoid did not specifically assert the legality of the search as a ground to suppress his statement. He is thus precluded from doing so on appeal. "A point on appeal must be based upon the theory voiced in the objection at trial and a defendant cannot expand or change on appeal the objection as made." *State v. Cannady,* 660 S.W.2d 33, 37 (Mo.App.1983). For all of the above reasons, Flenoid has failed to preserve and has waived any error relating to the admission of his statement. Given our holding that the search was valid, there is no need for plain error review.

The pistol was never introduced or received into evidence. Accordingly there can be no claim of error regarding the admission of the pistol.

Flenoid moved to suppress the cocaine and objected to the admissibility of the cocaine at trial. His motion to suppress and trial objections attacked the search and the warrant on various grounds, but not specifically on the ground raised in the brief. In his brief Flenoid argues the cocaine is inadmissible because the probable cause upon which the search warrant was issued on October 6 had dissipated by the time the search warrant was executed on October 12. Since this ground was not asserted at trial, it may not be raised on appeal. *Cannady,* 660 S.W.2d at 37. However, because of the importance of the

issues raised we will review this point *ex gratia.*

■ Section 542.276.8 RSMo (Cum.Supp. 1989) provides that a search warrant shall expire unless it is executed and the return is made within ten days after application has been made. Within that ten day period a search warrant must be executed within a reasonable time after it is issued. *State v. Jackson,* 821 S.W.2d 908, 910 (Mo.App. 1992). Time of execution is reasonable if probable cause still exists at the time the warrant was executed. *Id.* at 910.

Here, the record supports the conclusion that probable cause still existed at the time the search was executed. The warrant was issued on probable cause that cocaine would be found in the apartments to be searched. The warrant was based on an informant's tip that a subject stored cocaine on the premises and the officers' observation of a large volume of individuals going to the apartments for a short period of time and leaving. The additional information received by the police on October 11 and the subsequent surveillance of the apartments on that date indicated that the essential facts supporting probable cause for the issuance of the warrant had not changed. The drug trafficking at the apartments was continuing. The new information supplemented the circumstances supporting probable cause. Probable cause still existed for the presence of cocaine in the apartments. Because probable cause still existed, the warrant was valid and the time of its execution was not unreasonable.

Flenoid's argument that there was no probable cause to believe the same cocaine was in the apartment is without merit. Probable cause existed for the presence of any cocaine, not for a particular identifiable amount of cocaine. It was not necessary that the same cocaine remain on the premises, as long as probable cause continued to support the belief that any cocaine was on the premises. *See United States v. Shegog,* 787 F.2d 420, 422 (8th Cir.1986) (probable cause to search for PCP continued when detectives learned, after obtaining search warrant from Missouri state court, that subject was out of PCP but a new shipment was expected). Point two is denied.

■ Flenoid next asserts the trial court abused its discretion by admitting, over his objection, the beeper and currency seized from him during the search. He contends that these items constituted evidence of another crime, that he sold illegal drugs. He relies on the general rule that evidence of conduct relating to separate crimes, wrongs, or acts is inadmissible to prove character as the basis for an inference that the accused acted in conformity therewith. *State v. Reese,* 364 Mo. 1221, 274 S.W.2d 304, 307 (Mo. banc 1954). Flenoid recognizes that there are exceptions to this rule including the exception that such evidence is admissible when it tends to establish the elements of knowledge or intent. He further recognizes that under this exception, in cases of possession of a controlled substance, the admission of other illegal narcotics or narcotics paraphernalia has been held to be proper, as it has a logical tendency to show possession of the controlled substance with full knowledge of its illegal character, citing *State v. Pernell,* 606 S.W.2d 389, 391–92 (Mo.App.1979). However he argues that in this case the evidence of the beeper and cash could not constitute such evidence because 1) it did not logically tend to show that he was a drug seller and, 2) even if it did have probative value, its prejudicial effect outweighed that probative value. We disagree.

Flenoid carried the beeper and cash at the same time as he possessed the drugs. The challenged evidence thus constitutes part of the *res gestae* of the charge being tried. Evidence of a separate crime that is a part of a sequence of events connected to the crime for which the defendant is being tried is admissible because it is part of the *res gestae* of the crime charged. *State v. Davis,* 806 S.W.2d 441, 443 (Mo.App.1991). This evidence was admissible to present a complete and coherent picture of events surrounding the possession of the cocaine and weapon. *See Meadows,* 785 S.W.2d at 640. The state is given the latitude to furnish a complete and cohesive picture of the charged offense.

Moreover the evidence of the beeper and cash, to the extent it indicated that Flenoid sold drugs, was a circumstance tending to show his knowledge and intent in possessing the cocaine, and as such was relevant and admissible. *State v. Williams*, 539 S.W.2d 530, 533–535 (Mo.App.1976). This evidence also corroborates Flenoid's statement to police, which he disputed at trial, that he was selling the cocaine.

The fact that there was stronger relevant evidence adduced at trial does not preclude the state from also using allegedly weaker relevant evidence. Because the state has the burden of proving a defendant's guilt beyond a reasonable doubt, the state should not be unduly limited in the manner in which it satisfies this quantum of proof. *State v. Baker*, 741 S.W.2d 63, 67 (Mo.App.1987). Relevant evidence is not inadmissible because it may be prejudicial. Relevance, not prejudice, is the touchstone of due process. *State v. Trimble*, 638 S.W.2d 726, 732 (Mo. banc 1982). Where the evidence of other crimes is logically relevant, the court must consider the degree to which it may prejudice the jury against defendant. *State v. Cheesebrew*, 575 S.W.2d 218, 223 (Mo.App.1978). The weighing of prejudice and probative value rests in the discretion of the trial court. *Trimble*, 638 S.W.2d at 732. In the exercise of this discretion we may consider the state's heavy burden of proof. *Cheesebrew*, 575 S.W.2d at 223. At trial defendant denied any knowledge of the cocaine. We find no abuse of discretion and no error in the admission of the beeper and cash. Point three is denied.

In his fourth point Flenoid asserts the trial court erred by failing to take action requested by defendant with respect to the state's use of his prior convictions on cross-examination. The challenged portion of cross-examination is as follows:

Q. [By the prosecutor] And did you ever see anybody who lived there with a bottle of Dormin? That's legal.

A. [By the defendant] No, I haven't.

Q. And you never did hold these [the drugs contained in the Dormin bottle], I mean, you've already denied that, right?

A. When they say that I possessed them, they haven't had any evidence to show that I possessed them.

Q. *Right, despite the fact that you have been found guilty by a jury and you were found guilty on December 9, 1982?*

MS. BORESI: Your Honor, I object. He's improperly using these prior convictions.

THE COURT: I'm sorry.

MS. BORESI: Your Honor, at this time I'm going to object that Mr. Fellows is improperly using these prior convictions.

THE COURT: Overruled.

Q. (BY MR. FELLOWS) All right. Now, your attorney went over your priors rather swiftly but I want to go over them again. On this one possession of marijuana, a felony, over thirty-five grams of marijuana, at least thirty-five grams of marijuana, you were sentenced on January 21, 1983 to three years in the Missouri Department of Corrections after a jury found you guilty of that charge, isn't that true?

A. Yes.

Q. *And then yet you expect the jury not to believe that you would possess drugs?*

[Emphasis added]

At that point defense counsel objected and moved for a mistrial. The trial court sustained the objection, but denied Flenoid's motion for a mistrial.

Flenoid first seeks our plain error review [1] of the court's failure to sustain his objection to the first italicized cross-examination question set out above in which the state made reference to a prior conviction. As a general rule, when a defendant testifies, he is subject to cross-examination and impeachment as is any other witness. § 546.260 RSMo 1986. The prior convictions of any witness, including the accused, are admissible for impeachment purposes. § 491.050 RSMo 1986. The trial court has no discretion to prevent the use of prior criminal convictions to impeach the credibility of a witness or the accused. In a crimi-

**1.** This error was not preserved in his motion for new trial.

nal trial, the state has an absolute right to demonstrate a defendant's prior convictions and the nature and time thereof for the purposes of impeachment. *State v. Simmons*, 825 S.W.2d 361, 364 (Mo.App.1992). The trial court has discretion to control the scope of that cross-examination and we will not interfere unless that discretion is abused. *Id.*

Although prior convictions of any crime may be used to impeach a defendant, a prior conviction also may be used as evidence of the offense if it has some legitimate tendency to directly establish the defendant's guilt of the charge for which he is on trial. *State v. Arney*, 731 S.W.2d 36, 39–40 (Mo.App.1987). In this case, to prove possession the state was required to prove that Flenoid was aware of the presence and character of the substance and that he knowingly and intentionally had it under his control. *State v. Mitchell*, 811 S.W.2d 809, 812 (Mo.App.1991). Flenoid had five previous convictions for illegal possession of controlled substances including cocaine, marijuana and diazapam. The fact that he had illegally possessed controlled substances in the past, including cocaine, could legitimately tend to establish the elements that he was aware of the character of the substance as cocaine and had the requisite knowledge and intent. *Cheesebrew*, 575 S.W.2d at 222–23 (proof of possession of marijuana on a date earlier than date on which possession was charged was relevant to prove knowledge and intent).

The effect of prosecutor's question is unclear in the context in which it arose. At this point in the transcript it is not apparent if he was suggesting a propensity to possess drugs or if he was using the conviction as substantive evidence of the elements of the crime or for impeachment. Even though the objection was overruled, the prosecutor rephrased the question in a proper manner for impeachment purposes. Under these circumstances no manifest injustice occurred. The trial court did not plainly err in overruling the objection.

The court sustained the objection to the second question. That question was argumentative and did suggest that Flenoid had a propensity to possess drugs. Although the question was improper, the court did not abuse its discretion by failing to grant the drastic remedy of a mistrial. The direct evidence of guilt on the charged crime was strong. It was based upon eyewitness testimony of police officers who observed and retrieved the drugs for which Flenoid was charged and Flenoid's own admission to the officers that he was selling the drugs for someone else. The verdict demonstrates the jury believed their testimony. In light of this overwhelming evidence we do not find Flenoid was prejudiced by the trial court's denial of his motion for a mistrial. Point four is denied.

 In his fifth point Flenoid asserts the trial court plainly erred by submitting to the jury the MAI–CR3d 331.20 verdict director on unlawful use of a weapon. Flenoid argues he was entitled to an instruction on the "business premises" or "dwelling unit" exception to the crime of unlawful use of a weapon under § 571.-030.3 RSMo 1986. This issue was not raised in Flenoid's motion for a new trial and is not preserved for appeal. Rule 29.-11(d). Accordingly we may only review for plain error. Rule 29.12(b).

For a defendant to be entitled to an instruction on an exception to the unlawful use of weapons statute, there must be evidence that he is within an excepted category of the statute. Under the exceptions Flenoid seeks to invoke in this case, there must be evidence that he possessed a firearm in his dwelling unit or upon business premises over which he had possession, authority, or control. § 571.030.3. At the time of the offense, the apartments at 5506 and 5506A Wabada were neither Flenoid's dwelling nor his business premises, but were the dwellings of others. Flenoid argues that because he was in those apartments under a contract to paint them they were his business premises. We disagree. The contract to paint the apartments, as described in the evidence, did not convert those apartments into Flenoid's business premises. Absent evidence that Flenoid was within an excepted category of the statute, the trial court had no duty to instruct the jury on the exception to the

crime of unlawful use of a weapon. *State v. Achter*, 514 S.W.2d 825, 830 (Mo.App. 1974). There was no error, plain or otherwise. Point five is denied.

 In his final point on direct appeal, Flenoid contends that the trial court plainly erred by submitting the MAI–CR3d instruction defining reasonable doubt. This point has been thoroughly and repeatedly addressed by the Missouri Supreme Court. *State v. Twenter*, 818 S.W.2d 628, 634 (Mo. banc 1991). This court is constitutionally bound to follow the last controlling decision of the Supreme Court of Missouri. *State v. Weems*, 800 S.W.2d 54, 58 (Mo.App. 1990). Defendant argues that the recent decision of the United States Supreme Court in *Cage v. Louisiana*, 498 U.S. 39, 111 S.Ct. 328, 112 L.Ed.2d 339 (1990) invalidates MAI–CR3d 302.04's definition of proof beyond a reasonable doubt. The Missouri Supreme Court has explicitly held that MAI–CR3d 302.04 meets the constitutional requirements for a definition of reasonable doubt and is unlike the charge in *Cage* which equated proof beyond a reasonable doubt with a lower standard. *State v. Griffin*, 818 S.W.2d 278, 282 (Mo. banc 1991). Point six is denied.

### POST–CONVICTION APPEAL

For his appeal from the motion court's denial of relief under Rule 29.15, Flenoid asserts the motion court erred in failing to hold an evidentiary hearing on his allegations that he was denied effective assistance of counsel at trial. He alleged his trial counsel was ineffective in failing to call Jesse Tammons Williams and Anna Simpson as witnesses, in failing to introduce documents to corroborate his testimony regarding his presence at the apartment, and in failing to timely move to stay the proceedings or quash the venire panel and indictment. The motion court denied the hearing, finding Flenoid had not alleged any facts which would have aided him at trial.

 Review of a denial of a Rule 29.15 motion is limited to a determination of whether the findings, conclusions and judgment of the motion court are clearly erroneous. Rule 29.15(j); *State v. Childers*, 801 S.W.2d 442, 446 (Mo.App.1990). The

findings of fact and conclusions of law are clearly erroneous only if, after review of the entire record, the appellate court is left with the definite and firm impression that a mistake has been made. *Childers*, 801 S.W.2d at 446.

 To prevail on a claim of ineffective assistance of counsel, a movant must show both that counsel's performance was deficient and that the deficient performance prejudiced his defense. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674, 693 (1984). To prove deficient performance a movant must show that counsel's acts or omissions were outside the range of professionally competent assistance. *Id.* To do this movant must overcome the presumption that counsel's challenged acts or omissions were sound trial strategy. *Childers*, 801 S.W.2d at 447. To show prejudice, a movant must show there was a reasonable probability that, but for the errors by his attorney, the jury would have had a reasonable doubt respecting his guilt. *Id.* If a movant makes an insufficient showing on either the deficient performance component or the prejudice component, the court need not address the other component. *Strickland*, 466 U.S. at 697, 104 S.Ct. at 2069.

 To be entitled to an evidentiary hearing on the issue of ineffective assistance of counsel, a movant seeking relief under Rule 29.15 must plead facts, not conclusions, which, if true, would warrant relief. *State v. Jennings*, 815 S.W.2d 434, 448–49 (Mo.App.1991). The allegations must be unrefuted by the record, and the matters complained of must have prejudiced the movant. *Id.* at 449. A hearing is not required if the motion, files, and records of the case conclusively show that the movant is not entitled to relief. Rule 29.-15(g).

 In his motion Flenoid alleged that Ms. Williams, his mother, would have corroborated his trial testimony that she had contracted with him to paint the apartment and had paid him cash in advance to do so. He further alleged that Ms. Simpson also would have corroborated his defense in that she was present in the apartment and

could testify that he was painting and to her knowledge Flenoid did not possess drugs or a gun. He alleged the documents would have established that he did business under the name of Tri–Angle Co. prior to his arrest. The motion court found the testimony of Ms. Williams and Ms. Simpson and the documents regarding Flenoid's home improvement business would be merely cumulative evidence which restated facts Flenoid testified to at trial. The court concluded that even if every fact alleged in Flenoid's motion were accepted as true, these facts would not have provided Flenoid a viable defense.

The testimony of the two witnesses as alleged in the motion and the documents attached to the motion would not have provided a viable defense. Ms. Williams' purported testimony would corroborate defendant's testimony that he had a contracting business and that she had hired and paid him to paint the apartment. But such testimony would not have provided a defense because it does not negate any element of the charge of possession of cocaine in the apartment. For the same reasons the documents indicating that Flenoid had a license to do business in the City of St. Louis and his business contracted for paging service do not negate any element of the charge of possession of cocaine.

Ms. Simmons was alleged to be present in the apartment. However it was not alleged that she could refute the police officers' testimony as to Flenoid's possession of the cocaine or the weapon. Instead it was alleged that she would have testified "that *to her knowledge* movant was not in possession of drugs or a gun; and that movant did not *appear* to be selling drugs while at the apartment." [emphasis added]. Moreover the record conclusively establishes that Ms. Simmons did not witness either Flenoid's confrontation with the police or their discovery of the cocaine or the weapon. Flenoid testified at trial that Ms. Simmons was in another room of the apartment watching television prior to and at the time of his confrontation with police officers. The police officers also testified that Ms. Simmons was alone in a front room when they entered and was detained in that room while Flenoid was apprehended and searched in a back room of the apartment. Since she was neither in the kitchen, nor in the back bedroom of the apartment, she could not testify that Flenoid was not in possession of drugs or a gun at the time he threw the container down or was searched.

None of the alleged testimony or documents would have provided Flenoid a defense. At most they would have bolstered his credibility on collateral issues. Failure to call such witnesses or introduce such documents does not constitute ineffective assistance of counsel. *Applegate v. State,* 705 S.W.2d 110, 111–12 (Mo.App.1986). The allegations of the motion do not contain facts, which, if true, would have warranted relief. Absent such allegations in the motion, Flenoid was not entitled to an evidentiary hearing.

Flenoid next argues counsel was ineffective for failing to move to stay the proceedings, quash the venire panel and the indictment. Flenoid asserts that his testimony, that of trial counsel, and judicial notice of the court files and records of another proceeding would establish that the grand and petit juries were not randomly selected from a fair cross section of the community. The motion court properly found these claims to be trial errors not cognizable in a motion for post-conviction relief. *See State v. Six,* 805 S.W.2d 159, 173 (Mo. banc 1991). No exceptional circumstances exist in this case to give rise to the rare situation in which a motion court should address such a contention. The trial court did not err in denying Flenoid a hearing on this claim.

The judgment of the trial court is modified to remove the finding that Flenoid was a class X offender. As modified the judgment of the trial court is affirmed. The order of the motion court is affirmed.

CARL R. GAERTNER, P.J., and SIMON, J., concur.