Cheryl AYOTTE, Appellant,

v.

PILLSBURY COMPANY and Insurance Company of North America, Respondents.

No. 18813.

Missouri Court of Appeals,
Southern District,
Division One.

March 2, 1994.

Charles Buchanan, Joplin, for appellant.

Ronald G. Sparlin, Blanchard, Van Fleet, Martin, Robertson & Dermott, P.C., Joplin, for respondents.

PARRISH, Chief Judge.

Cheryl Ayotte (claimant) appeals from the Labor and Industrial Relations Commission's (the commission) award allowing compensation. This court reverses and remands.

Claimant injured her back and right shoulder while employed by Pillsbury Company (Pillsbury). She sustained the injury in the course of repeatedly placing boxes filled with frozen biscuits up and onto a table located behind her. Claimant timely filed a claim for compensation. Pillsbury was insured by Cigna Insurance Company (Cigna). Pillsbury and Cigna filed their answer denying the claim for compensation.

After claimant filed her claim for compensation, a representative of Cigna, Frances Goodman, contacted her by telephone.[1] Claimant described her conversation with Ms. Goodman:

> She said that the rating from the doctor allowed 2% and they were willing to offer $2,100—somewhere, I don't remember the exact amount. Plus they had never paid me for the month I was in physical therapy everyday workman's comp. wages. So she would send a check for the workman's comp. wages for that month and an additional check for the case to be settled.

Claimant was asked the following questions about her conversation with Ms. Goodman and gave the following answers.

Q. And what was your response to the proposal? What response did you make to Mrs. Goodman in that telephone conversation?

A. I told her that I was represented by Mr. Scott and I would like to talk to my husband and also to Mr. Scott about this offer.

Q. And did you talk to Mr. Scott?

A. Well, I didn't finish.

Q. I'm sorry.

A. If she would mail me this paperwork, I would look it over and I would allow him to look it over and I would get back to her.

She was also asked the following questions about her conversation with Mr. Scott following her discussion with Ms. Goodman and gave the following answers.

Q. And did you talk with Mr. Scott?

---

1. The record on appeal does not explain why claimant, who was represented by an attorney, was contacted directly by Cigna's employee.

A. Yes, I called him to let him know that she had contacted me. I don't know if it was the same day or the next day but shortly after I talked to her I talked to him.

.     .     .     .     .

Q. And what conversation did you have with Dan Scott?

A. I told him what I had—what she had told me over the phone and he asked me how I felt about that and I told him that I just didn't know what to do. And he said if it would help matters any he would be willing to waive any attorney fee that I would have to pay him out of that money if I wanted to go ahead and accept it.

Q. What did you tell him about whether you would or would not accept the proposal that had been made by Mrs. Goodman over the telephone?

A. I told him the same thing I told her, I was unsure what the best thing for me to do was.

A handwritten "memorandum" dated "6–12–91" was sent by Frances Goodman to Daniel Scott. It referenced, "Subject: W/C injury." It stated:

Dear Mr. Scott. [sic]

Dr. Mehaffy has released her from treatment and rated her at 2% of the arm, which I would take to the shoulder.

At this time I would like to offer 5% of the shoulder or 11.6 weeks times $186.68 amounting to $2165.49 full and final.

Please present the offer to your client and provide us with her response.

Thanks

/s/ Frances

Mr. Scott sent a letter dated June 24, 1991, to Ms. Goodman and Mr. Greg Carter, the insurer's attorney. It referenced, "Cheryl Ayotte v. Pillsbury; Injury No. 90–151193." The letter stated:

Dear Frances and Greg:

Confirming my phone conversations this morning with Frances and with my client, a settlement has been reached for four additional weeks of accrued but unpaid TTD plus an additional $2,165.49 PPD (5% at the shoulder). I've agreed to withdraw and waive any claim for attorney's fees or expense reimbursement, so that Ms. Ayotte can receive all of this money. Enclosed is a copy of my withdrawal, being filed today with the Division. It will not be necessary to put my name on the settlement check, but instead, you can deal directly with Ms. Ayotte.

Thanks for your assistance and courtesies.

Very truly yours,
COPELAND & SCOTT
/Dan/
By: Daniel E. Scott

The letter showed a copy being sent to Ms. Cheryl Ayotte.

Mr. Carter, as attorney for the employer and the insurer, sent a letter to claimant dated July 8, 1991, referenced, "Pillsbury Company." The letter advised her, "Frances Goodman, with Cigna Insurance Company, indicates that she has arrived at an agreement with you for settlement of your workers' compensation case. The settlement is for a total of $2,165.49." The letter stated that an original and three copies of a settlement agreement and an original and one copy "of a pink receipt for compensation" were enclosed. It explained how to execute the documents and requested that claimant execute them; that she keep one copy of each for herself and return the originals and the remaining copies to Mr. Carter.

Claimant was asked about the proposed settlement agreement. She testified:

Q. [By claimant's attorney] And was there anything about the agreement that concerned you?

A. A big major concern was the paragraph in there that says past, present or future medical bills. I was told by Dan Scott that it would not be any future medical bills, but I never realized that past or present would not be paid.

Q. Is the language that concerned you, this language here that reads, "the employer and insurer are not assuming or agreeing to pay any past, present or future medical expenses incurred by her or on her behalf for the treatment of any conditions resulting from her alleged accident

but that she will have to pay all past, present or future medical expenses from the amount being paid to her under the terms of this settlement." [2]

A. Yes.

Q. Had anyone ever told you that that was going to be a term or provision in the settlement?

A. Never.

Q. And were you surprised when you saw that information in this proposed settlement?

A. Yes.

Q. And at that time was Mr. Scott continuing to represent you?

A. No.

A hearing was held before an administrative law judge on the claim for compensation. At the outset of the proceeding, the administrative law judge announced, "It is my understanding that the sole issue for determination at this hearing is whether there is a settlement agreement which should be enforced, is that correct gentlemen?" The attorneys for the employer/insurer and claimant answered, "Yes."

The administrative law judge found that a settlement had been reached by the parties and "approved" the settlement. That decision was reviewed, upon claimant's application, by the commission. *See* § 287.480.[3] The commission affirmed the award of a lump sum in the amount of $2,165.49 for permanent partial disability based on the purported settlement agreement. § 287.470.

Claimant's first point on appeal alleges the commission erred in finding that there was an agreement to settle the claim. Claimant asserts that the written agreement submitted for claimant's signature was not the same as the oral agreement negotiated with the insurer's representative; that there was no agreement that previously incurred medical bills would not be paid by Cigna. Claimant contends the provision that absolved the insurer of liability for medical bills was a counteroffer that she did not accept.

Claimant's first point presents a question of law. Was there a contract between claimant and the insurer for settlement of the claim?

This court may modify, reverse, remand for rehearing or set aside the award of the commission only if the commission's actions were unauthorized by law or in excess of its authority, fraudulent, unsupported by the facts as found by the commission, or unsupported by competent evidence. § 287.495.

*Lawson v. Emerson Elec. Co.,* 833 S.W.2d 467, 470 (Mo.App.1992).

The same rules that govern construction and interpretation of contracts generally apply to settlement agreements in workers' compensation cases. *See* 100 C.J.S. *Workmen's Compensation* § 407 (1958). As such:

Courts cannot make a contract for the parties that they did not make for themselves, or impose upon the parties an obligation not assumed. *Seattle–First National Bank v. Earl,* [17 Wash.App. 830, 565 P.2d 1215, 1218 (1977) ].

*Johnston v. First National Bank,* 624 S.W.2d 500, 503 (Mo.App.1981).

The agreement between claimant and the insurer was negotiated by claimant without the assistance of her attorney,[4] for whatever reason, and Frances Goodman, an employee of the insurer. There was no evidence before the commission that any proposal regarding unpaid medical bills was discussed. The correspondence between the attorney who filed the claim for claimant and the insurer's employee and the later correspondence between that attorney and an attorney representing the insurer and the employer made no reference to any discussions or agreements regarding payment of past medical expenses.

Notwithstanding the importance of providing medical care for employees covered by the Workers' Compensation Law, *see* § 287.-140, the first reference to payment of claimant's medical bills was the statement in the

---

**2.** This language is in an affidavit prepared for claimant's signature. The affidavit follows the place on the "Compromise Settlement Agreement" that was prepared for the signatures of claimant and the attorney for the employer and the insurer.

**3.** References to statutes are to RSMo 1986.

**4.** The attorney who represents claimant in this appeal is not the attorney who represented her at the time she negotiated an agreement with the insurer's employee.

affidavit that followed the proposed settlement agreement that was mailed to claimant by the attorney for the insurer/employer. The addition of that provision was not agreed to by claimant. As such, it altered the terms previously discussed. Claimant was not bound by it. The "new or variant terms" constituted a different offer to that previously made by Ms. Goodman. *See Londoff v. Conrad,* 749 S.W.2d 463, 465 (Mo.App.1988).

The commission's award was based on the erroneous legal conclusion that a settlement agreement had been reached. That conclusion was not supported by sufficient competent evidence in the record that was before the commission. § 287.495.1(4). Claimant's first point is granted. The award must be reversed.

Point I is dispositive of this appeal. It is unnecessary to consider the second point claimant presents. However, this court observes that Point II is based on the failure of the administrative law judge to follow procedures established by 8 C.S.R. § 50–2.010(31)(B). The record on appeal does not disclose compliance with the provisions of the Code required for securing settlement agreements in workers' compensation cases. Although Point I is dispositive, claimant's Point II is also well-taken.

The award of the commission is reversed. The case is remanded for further proceedings on the pending claim.

SHRUM and MONTGOMERY, JJ., concur.