**STATE Of Missouri, Respondent,**

**v.**

**Yulris L. WATSON, Appellant.**

**No. ED 97303.**

Missouri Court of Appeals,
Eastern District,
Division Five.

Nov. 27, 2012.

Motion for Rehearing and/or Transfer to Supreme Court Denied Jan. 7, 2013.

Application for Transfer to Supreme Court Denied Feb. 26, 2013.

S. Kathleen (Kate) Webber, Jefferson City, MO, for appellant.

Chris Koster, Robert J. (Jeff) Bartholomew, Jefferson City, MO, for respondent.

GARY M. GAERTNER, JR., Chief Judge.

### Introduction

Yulris Watson (Defendant) appeals his convictions and sentences for possession of a controlled substance with intent to distribute and possession of drug paraphernalia with intent to prepare a controlled substance. Defendant argues he did not receive a fair trial due to the trial court's ruling on the admission of certain evidence. We affirm.

### Background

On April 19, 2010, Sergeant Mark Sorocko was assigned with Officers Eric Arnold and Paul Wunderlich to a police team that patrolled certain areas known for drugs, burglaries, and gang activity. The three officers were dressed in plainclothes with black police vests, and they were riding in an unmarked police vehicle. At about 5:30 p.m., the officers observed a parked Cadillac with doors that opened straight up, rather than opening outward away from the car, Because this was unusual for them to see in that area, the officers decided to get a better look at the vehicle.

Sergeant Sorocko testified they drove the police vehicle slowly toward the Cadillac and saw two men seated inside. One man exited the Cadillac and began talking to Defendant, who had come out of a gangway carrying a plastic grocery bag. Sergeant Sorocko believed a drug transaction was about to take place. The three officers got out of their vehicle to talk to the men on the sidewalk. Upon seeing the police, Defendant dropped the plastic bag he was holding, which spilled open. The contents that fell out of the bag were a small coffee grinder and a small plastic baggy containing approximately 100 empty clear gelatin medicine capsules, both of which are items commonly used in the sale of drugs. At that point, Defendant also turned and began to run back into the gangway.

Sergeant Sorocko chased Defendant through the gangway, between buildings, and over hills. At one point, Defendant fell down, and as he got up he reached for what Sergeant Sorocko observed was the handle of a gun in his waistband. As the chase continued, Defendant rounded a building, and Sergeant Sorocko lost sight of him for about ten seconds. Several people nearby pointed in the direction Defendant had run. When Sergeant Sorocko followed, Defendant surrendered and Sergeant Sorocko took him into custody.

Meanwhile, Officer Arnold called for backup and remained with the two men who had been in the Cadillac. The men told him that they had come to obtain drugs from Defendant because Defendant owed them money. When backup arrived, Officer Arnold took an inventory of the contents of the bag Defendant dropped. He found a bottle containing what was later identified as 1.68 grams of heroin, a controlled substance. The bottle itself was a Dormin bottle, which is a sleep aid that is commonly mixed with heroin. Officer Arnold also found a razor blade, a toothbrush, a saucer, an electronic scale, and a box of plastic baggies. Additionally, Officer Arnold searched the two men who had driven up in the Cadillac, and he searched the Cadillac itself. He did not find any contraband. After giving their statements to Officer Arnold, the men were free to go.

Defendant was charged with possession of a controlled substance with intent to distribute and possession of drug paraphernalia. A jury convicted him of both counts, and the trial court sentenced him as a prior and persistent offender to concurrent terms of thirteen years and one year, respectively. This appeal follows.

## Discussion

Defendant raises three points on appeal. First, Defendant argues that the trial court abused its discretion by allowing testimony concerning the allegation that Defendant was carrying a gun while being chased by Sergeant Sorocko. Second, Defendant argues that the trial court abused its discretion by allowing Officer Arnold to testify that the occupants of the Cadillac told him that they intended to buy drugs from Defendant. Finally, Defendant argues the trial court plainly erred in allowing certain testimony at his sentencing hearing.

## Standard of Review

Regarding Points I and II, a trial court has broad discretion to admit or exclude evidence. *State v. Forrest*, 183 S.W.3d 218, 223 (Mo. banc 2006). We will reverse a trial court's evidentiary ruling only if the court clearly abused this discretion by making a ruling against the logic of the circumstances and so unreasonable as to indicate a lack of careful consideration. *Id.* Additionally, to require reversal, the erroneous ruling must have resulted in prejudice to the defendant; namely, that

the error affected the outcome of the defendant's trial. *Id.* at 224.

## Point I

First, Defendant argues the trial court abused its discretion by allowing Sergeant Sorocko to testify that he saw a handgun in Defendant's waistband during his pursuit of Defendant through the streets. Defendant argues that because the police never found a gun on Defendant's person or in the vicinity of the chase, and because Defendant was not charged with any offense related to his alleged possession of a gun, Sergeant Sorocko's testimony amounted to evidence of uncharged crimes that improperly influenced the jury. We disagree.

Evidence of uncharged crimes or wrong acts committed by a defendant is inadmissible when its purpose is to show the defendant has a propensity to commit the crime for which he is standing trial. *State v. Primm*, 347 S.W.3d 66, 70 (Mo. banc 2011). However, such evidence may be admissible for other purposes, including to establish motive or intent to commit the crime with which the defendant is charged. *State v. Bernard*, 849 S.W.2d 10, 13 (Mo. banc 1993). Additionally, this type of evidence, when it is part of the surrounding circumstances or sequence of events relating to the charged crime, is "admissible to present a complete and coherent picture of the events that transpired." *Primm*, 347 S.W.3d at 70 (internal quotations omitted); *State v. Morgan*, 366 S.W.3d 565, 581 (Mo. App. E.D.2012). Further, the State has latitude to furnish this kind of complete picture to the jury. *State v. Flenoid*, 838 S.W.2d 462, 467 (Mo.App. E.D.1992).

To be admissible for this purpose, in fact for any purpose, evidence must be logically relevant, in that it tends to establish the defendant's guilt of the charged crime, and legally relevant, in that its probative value outweighs its prejudicial effect. *Morgan*, 366 S.W.3d at 581. However, "[r]elevant evidence is not inadmissible because it may be prejudicial." *Flenoid*, 838 S.W.2d at 468. The determination of whether any prejudice outweighs the probative value of evidence of uncharged acts is within the sound discretion of the trial court. *Id.*

In Missouri, when a defendant has been charged with possession or distribution of a controlled substance under Section 195.211,[1] "evidence of the defendant's contemporaneous possession of other drugs, weapons, money or drug paraphernalia is relevant and admissible to show that the defendant knowingly and intentionally possessed the controlled substance." *State v. Dowell*, 25 S.W.3d 594, 603 (Mo.App. W.D.2000) (citing cases). Defendant argues this principle should not apply when, as here, no weapon is actually recovered. We disagree.

Sergeant Sorocko's testimony that he saw a gun in Defendant's waistband constitutes evidence that Defendant possessed a gun as he ran from police and is part of a coherent picture of the events that transpired. Defendant's attorney had an opportunity to cross-examine Sergeant Sorocko and attempt to discredit his eyewitness account by setting before the jury the fact that police were unable to locate the gun after a thorough search. Additionally, Defendant's counsel presented the fact that Defendant had a cell phone on his person when he was arrested and argued that cell phone was what police saw, rather than a gun.

Because the State bears the burden of proving guilt beyond a reasonable doubt, it "should not be unduly limited in the manner in which it satisfies [its] quantum of

---

1. All statutory references are to RSMo. (2000) unless otherwise indicated.

proof." *Flenoid*, 838 S.W.2d at 468. The fact that this testimonial evidence may have been weaker than other evidence of Defendant's guilt does not render it inadmissible or unduly prejudicial. *See id.* (where defendant charged with possession denied knowledge of cocaine found in plastic bottle he dropped when chased by police, trial court did not abuse discretion in admitting evidence that beeper and cash were found in defendant's pocket, though weaker than other evidence of guilt). The trial court did not abuse its discretion in allowing the State to present a coherent picture of the events through Sergeant Sorocko's testimony. Point denied.

## Point II

■ Defendant argues that the trial court abused its discretion by allowing Officer Arnold to testify that the passengers of the Cadillac told him they were planning to buy drugs from Defendant. Because of the particular circumstances present in this case, we do not find that the trial court abused its discretion.

At trial, Officer Arnold's direct examination testimony contained none of the substance of the conversation he had with the two occupants of the Cadillac, nor did Officer Arnold mention the fact that he searched the two men and their car. During cross-examination, defense counsel elicited this information from Officer Arnold, and the fact that the officers found no contraband in either search. At the end of defense counsel's cross-examination, the prosecutor requested to approach the bench. The prosecutor told the court he believed by these questions, defense counsel opened the door to testimony of the statements by the men that they were there to obtain drugs from Defendant because those statements explained why Officer Arnold chose to search the men and the car. The court allowed this testimony

on redirect examination. On further cross-examination, the court also allowed defense counsel to elicit additional testimony about what the men said, including the fact that they did not mention Defendant by name to Officer Arnold. Defendant requested a mistrial, or alternatively, that the court give a limiting instruction regarding Officer Arnold's testimony. The trial court instructed the jurors as follows:

> Ladies and Gentlemen, there was testimony yesterday from ... Eric Arnold, who ... told you what two occupants of the gold Cadillac said to him about why they were there, to buy drugs from the defendant.... That evidence was allowed in only for the purpose of explaining why the officers did what they did. You are not to consider it as evidence that the defendant is guilty of this crime. It's to explain why they did what they did with those two people, why they took the actions they did....

Defendant argues on appeal that the statements implicating him as the seller of the drugs found at the scene were inadmissible hearsay statements. Defendant also argues that his trial counsel did not open the door to make such testimony proper. We disagree.

Out-of-court statements, when offered as proof of the matters they assert, are generally inadmissible as hearsay. *E.g., State v. Gray*, 347 S.W.3d 490, 500 (Mo.App. E.D.2011). This is because such statements violate a defendant's constitutional right to confront any witness who testifies against him or her. *State v. Edwards*, 116 S.W.3d 511, 532 (Mo. banc 2003). However, out-of-court statements admitted for purposes other than their truth, such as explaining the subsequent conduct of police, are not considered hearsay and do not raise the same constitutional concerns. *State v. McGee*, 284 S.W.3d 690, 702 (Mo. App. E.D.2009). Such statements that im-

plicate the defendant's guilt "are admissible only to the extent they are necessary to explain the subsequent police conduct testified to at trial." *Id.* (citing *State v. Murray*, 744 S.W.2d 762, 773 (Mo. banc 1988)).

■■ Additionally, statements that are otherwise inadmissible may be admitted if defense counsel "opens the door" to them on cross-examination. *See State v. Odom*, 353 S.W.2d 708, 711 (Mo. banc 1962). If a party "introduces part of an act, occurrence, or transaction, the opposing party is entitled to introduce or to inquire into other parts of the whole thereof, in order to explain or rebut adverse inferences which might arise . . ., or prove his version with reference thereto." *Id.* (internal quotations omitted); *see also State v. Lingar*, 726 S.W.2d 728, 734–35 (Mo. banc 1987), *abrogated on other grounds by State v. Taylor*, 238 S.W.3d 145, 150 (Mo. banc 2007). In such situations, prosecutors have been permitted to introduce additional evidence, "notwithstanding that the facts elicited may be prejudicial to the defendant." *Lingar*, 726 S.W.2d at 734 (citing *State v. Crawford*, 619 S.W.2d 735, 740 (Mo. banc 1981)). Furthermore, this evidence can come in "even though [it] was in the first place illegal." *Odom*, 353 S.W.2d at 711.

Applying these rules to the present case, it is clear the statements at issue would not have been admissible on direct examination. The search of the Cadillac and its occupants was not relevant to whether Defendant committed the crimes of drug possession and intent to distribute. *See State v. Chambers*, 891 S.W.2d 93, 103 (Mo. banc

1994) (explaining holding in *Lingar* that "evidence initially inadmissible (because irrelevant) may become relevant when the opponent injects an issue"). As the search was not in evidence, the facts that led to Officer Arnold's decision to conduct the search were likewise irrelevant. Thus the statements the two men made would have had only an impermissible hearsay purpose.

However, defense counsel injected the issue of the search into the trial by asking about it during cross-examination, and in so doing the defense provided only a partial account of the events surrounding the search. Because of the presence of a potential negative inference, that Officer Arnold's choice to search the men and the car was without cause, we do not find the trial court abused its discretion in allowing this evidence to explain the reason for Officer Arnold's conduct.[2] *Accord State v. Allison*, 326 S.W.3d 81, 90 (Mo.App. W.D.2010) (direct examination testimony offered to show subsequent police conduct). Defense counsel similarly had an opportunity to adduce additional statements the men had made, in order to rebut the inference that the men had identified Defendant as the seller by name.

■ Finally, the trial court also gave a limiting instruction at defense counsel's request, admonishing the jury that the only purpose for those statements was to explain the reason for Officer Arnold's subsequent conduct. Jurors are presumed to follow the trial court's instructions. *State v. McFadden*, 369 S.W.3d 727, 752 (Mo. banc 2012). Under these circumstances,

---

2. However, we note that even in situations where it is necessary to explain an officer's subsequent conduct through evidence of conversations the officer had, it can be done while at the same time omitting the substance of those conversations, and thus avoiding any need for constitutional inquiry or limiting instruction. *See Edwards*, 116 S.W.3d at 532–33 (exemplifying best practice: no abuse of discretion where direct testimony describing conversations prompting police investigation did not contain any out-of-court statements).

we find no abuse of discretion. Point denied.

## Point III

■ Defendant argues that the trial court erred in permitting testimony at his sentencing hearing from two members of the community in which the crime took place, because such testimony is statutorily limited to only the direct victims of his crime. Defendant concedes this point was not preserved and requests plain error review.

Rule 30.20 [3] authorizes reversal on unpreserved claims of error when (1) the error is plain, meaning evident, obvious, and clear; and (2) the error produced a manifest injustice or a miscarriage of justice. *State v. White,* 247 S.W.3d 557, 561 (Mo.App. E.D.2007). We first determine whether a claim on its face establishes substantial grounds to believe the trial court committed such an error, resulting in manifest injustice or a miscarriage of justice. *Id.* If so, we exercise review "to determine whether manifest injustice or a miscarriage of justice has actually occurred." *Id.*

At Defendant's sentencing hearing, the trial court heard testimony from two representatives of the community regarding the general effect of the presence of drugs in that community. The trial court also considered the State's recommendation of seventeen years, along with a thirteen-year recommendation from the Missouri Department of Corrections. The latter was the result of the trial court's request for a pre-sentencing report examining Defendant's background, the crime, and the typical sentences given in similar situations. The report concluded that Defendant had an average risk of reoffending, though the court expressed a view that

Defendant actually had a high risk of reoffending, which would allow for a longer sentence. The trial court, however, decided to follow the recommendation of the Department of Corrections report and sentenced Defendant to a term of thirteen years.

Defendant argues that Section 577.041.2 limits victim impact testimony at sentencing hearings. Defendant argues only direct victims of a crime may testify under this statute. First, courts considering this argument have rejected it, and we do as well. *See, e.g., Sharp v. State,* 908 S.W.2d 752, 756 (Mo.App. E.D.1995). Second, Defendant's implication that there are no direct victims of drug offenses is mistaken; entire communities and individual neighborhoods are victimized and often destroyed by these drug crimes. *See State v. Garrett,* 820 S.W.2d 104, 105 (Mo.App. E.D.1991) (finding argument that drug offenses are not victimless crimes was not a misstatement of fact or law). Finally, there is no indication from the record that in any event, the trial court relied on the testimony of these witnesses in determining Defendant's prison term.

The record reveals no error, plain or otherwise. Point denied.

## Conclusion

The judgment of conviction and Defendant's sentences are affirmed.

Robert M. Clayton III, Lisa K. Page, JJ., Concur.

---

**3.** All rule references are to Mo. R. Crim. P. (2012) unless otherwise indicated.