**STATE of Missouri,
Plaintiff/Respondent,**

v.

**Curtis SILLS, Defendant/Appellant.**

**No. ED 97958.**

Missouri Court of Appeals,
Eastern District,
Division Two.

Aug. 13, 2013.

Lisa Stroup, St. Louis, MO, for appellant.

Gregory Barnes, Jefferson City, MO, for respondent.

LISA S. VAN AMBURG, Judge.

## INTRODUCTION

Curtis Sills ("Defendant") appeals from the judgment of the trial court, following a bench trial, convicting him of trafficking drugs in the second degree, section 195.223 RSMo Cum.Supp.2001. Defendant contends the trial court erred in finding him guilty, because the State did not present sufficient evidence to prove that he was in possession of more than two grams of a mixture or substance containing cocaine base, an element necessary to prove his guilt. Alternatively, he contends the court plainly erred in allowing into evidence incriminating statements and a subsequent written confession he made to police. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

On the evening of May 10, 2011, Detectives Curtis Burgdorf and Craig Robertson

received information that a person wearing an arm sling and fitting Defendant's description was in possession of crack cocaine in the area near Aloe Plaza, between Market and Chestnut Streets in the City of St. Louis. The detectives located Defendant and monitored his activity from their unmarked vehicle. They watched him as he appeared to engage in a drug transaction with an unknown woman. The detectives then exited their vehicle and approached him. They identified themselves as police, and asked him if he had anything on him. Defendant immediately admitted to having crack cocaine in his possession. Before the detectives could search him, Defendant retrieved his inhaler from a sling around his arm, and handed it to Detective Burgdorf. The detective inspected the inhaler and located what he believed to be crack cocaine inside of it. He then placed Defendant under arrest and read him his Miranda rights. After he was transported to the police station Defendant waived his Miranda rights and admitted in a written statement to possession of crack cocaine.

On July 11, 2011, the State charged Defendant with trafficking drugs in the second degree. Defendant waived his right to a jury trial and this case was tried before the court. At trial, the State presented evidence that Defendant was in possession of between 2 and 2.02 grams of crack cocaine at the time of his arrest. At the close of evidence, Defendant moved for judgment of acquittal, arguing the State failed to prove he possessed more than two grams of crack cocaine, an element essential to prove his guilt. The court denied Defendant's motion. Thereafter, the trial court found Defendant guilty and sentenced him to ten years in prison as a prior and persistent drug offender. This appeal follows.

## DISCUSSION

■ In his first point, Defendant contends the court erred in convicting him of trafficking drugs in the second degree, because the State did not prove beyond a reasonable doubt that he possessed more than two grams of a mixture or substance containing cocaine base. Specifically, Defendant contends the evidence was insufficient to prove the cocaine he had in his possession weighed more than two grams, as required by section 195.223.3. We disagree.

The credibility and weight of testimony are for the fact-finder to determine. *State v. Crawford*, 68 S.W.3d 406, 408 (Mo. banc 2002). On appeal, this Court does not reweigh the evidence or assess whether the evidence at trial established guilt beyond a reasonable doubt. *State v. Miller*, 372 S.W.3d 455, 463 (Mo. banc 2012). Rather we look to whether, in the light most favorable to the verdict, any rational fact-finder could have found the essential elements of the crime true beyond a reasonable doubt. *Id.* We accept as true all of the evidence favorable to the State which tends to prove a defendant's guilt, including all inferences in support thereof, and disregard all contrary evidence and inferences. *Id.*

■ A person commits the class B felony of trafficking drugs in the second degree if he possesses or has under his control more than two grams but less than six grams of a mixture or substance containing a detectable amount of cocaine base. § 195.223(3). "The weight of the substance is an essential element of this crime." *State v. Givens*, 917 S.W.2d 215, 216 (Mo.App. W.D.1996).

Here, the State adduced sufficient evidence to prove Defendant had more than two grams of cocaine base in his possession at the time of his arrest. The State called Brittany Cange ("Cange"), a foren-

sic scientist employed by the St. Louis Metropolitan Police Department, to testify at trial. Cange testified that on June 16, 2011, she tested the substance seized on May 10, 2011 from Defendant's inhaler and determined it to be cocaine base. She then weighed the crack cocaine and determined its weight at 2.01 grams "plus or minus 0.01 grams." The State's witness clarified the accuracy of the weight as follows:

Q. What does the plus or minus .01 grams mean?

A. That is the uncertainty that is associated with the scale that I use to measure the weight of the cocaine base.

Q. What does that mean, uncertainty?

A. Every scale has a distinguished margin of error; and based on daily calculations that were taken from a certified 10–gram weight, a standard—two standard deviations away from that mean is calculated at 0.01 grams. That is the uncertainty that is used lab-wide for the uncertainty of the balances in the drug section.

Q. So the certified weight that you use, how do you use that?

A. It's placed in a drawer, and prior to case work on a daily basis, the weight is removed. A plastic weigh boat is put onto the scale. The scale is torn to reflect a value of 0.00 grams to begin. The weight is then placed in the plastic weigh boat to prevent contamination or oils from getting on the weight, and the weight is then measured.

Q. And what should it be exactly?

A. The weight is 10.00 grams.

Q. And do you do that every day before you begin testing?

A. That is correct.

. . . .

Q. And I'm interested if you could share with the Court what the certified weight weighed on the day that you performed the test in this case on June 16th, 2011.

. . . .

A. The weight for—the weight weighed on June 16th of 2011, 10.00 grams.

Q. And that's exactly what it's supposed to weigh, correct?

A. That is correct.

Cange further testified that she was unable to weigh one hundred percent of the crack cocaine found in the inhaler because a small amount was lost when she transferred it to the scale as well as when she removed a "very minute" sample for color testing and confirmatory testing before it was weighed. She also stated that the cocaine base she tested contained water and the water in the substance may have evaporated between the period when Defendant was arrested on May 10, 2011, and the date it was weighed, on June 16, 2011.[1] On cross-examination, Cange conceded that the margin of error of .01 provided a degree of accuracy that would only permit her to say with a ninety-five percent degree of certainty that the weight of the crack cocaine was between 2.00 and 2.02 grams when she weighed it on June 16, 2011.

Cange's testimony was sufficient to support a finding that the weight of the cocaine Defendant had in his possession was above two grams. Her testimony showed that the scale she used was properly calibrated when she determined the crack cocaine's weight to be 2.01 grams and that

---

1. On the day of trial, the crack cocaine was re-weighed and Cange testified the weight dropped from 2.01 to 1.83 grams. Cange testified this change could also be accounted for due to evaporation of water.

Defendant may have actually been in possession of more than 2.01 grams of crack cocaine at the time of his arrest because the amount of cocaine base weighed on June 16, 2011 was somewhat less than the actual weight at the time of seizure due to water evaporation, loss of a "small amount" during transference to the scale, and removal of a "very minute" sample for color and confirmatory testing. Given the totality of the evidence, including the above testimony, and taking into account all favorable inferences in support of Defendant's guilt, we find the trial court could reasonably infer that the crack cocaine found in Defendant's possession weighed more than two grams. Accordingly, we find no error. Point denied.

In his second point, Defendant contends the trial court plainly erred in allowing into evidence incriminating statements he made to the police. Defendant concedes this point was not preserved and requests plain error review.

Although plain error affecting a defendant's substantial rights may be considered when the court finds that a manifest injustice or a miscarriage of justice has resulted therefrom, such consideration is in the appellate court's discretion. Rule 29.12(b); Rule 84.13(c). The plain error rule is to be used sparingly and does not justify our review of every point that was not properly preserved. *State v. Letica*, 356 S.W.3d 157, 167 (Mo. banc 2011). We will find plain error only when (1) the error is plain, meaning the error was evident, obvious and clear; and (2) the error produced a manifest injustice or a miscarriage of justice. *State v. Watson*, 391 S.W.3d 18, 24 (Mo.App. E.D.2012); *Boyd*, 954 S.W.2d at 606. A defendant's claim for plain error must establish on its face substantial grounds for us to believe the trial court committed such an error. *Id.*

The face of the trial court record does not support a plain error review for Defendant's unpreserved claim. *See State v. Feltrop*, 803 S.W.2d 1, 13 (Mo. banc 1991) ("Even if a person is a suspect in a crime, there is no custodial interrogation when he is not under arrest or otherwise restrained of his liberty at the time of the questioning."). Therefore we decline to subject Point II to our discretionary review. Point denied.

In his third point, Defendant also requests plain error review and contends that the trial court plainly erred in allowing his written confession into evidence. For purposes of plain error, manifest injustice is a bar higher than mere prejudice. *State v. Morgan*, 366 S.W.3d 565, 582 (Mo.App. E.D.2012). Defendant has failed to explain how the trial court's admission of his written confession into evidence had a decisive effect on the outcome of the trial such that it created a manifest injustice when this confession was substantively identical to a previous incriminating statement he made to police, and consistent with the police discovering crack cocaine in his inhaler. *See State v. Barton*, 240 S.W.3d 693, 706 (Mo. banc 2007) (holding no prejudice to a defendant, much less manifest injustice, when evidence of guilt erroneously admitted is merely cumulative of other evidence proving guilt); see *also State v. Smith*, 163 S.W.3d 63, 68 (Mo.App. S.D.2005) ("Because this is a court-tried case, we presume the trial judge disregarded any improperly admitted evidence in reaching the verdict."). Accordingly, we decline review. Point denied.

## CONCLUSION

The judgment of conviction and sentence of the trial court is affirmed.

KATHIANNE KNAUP CRANE, P.J. and MARY K. HOFF, J., concur.