**STATE of Missouri, Respondent,**

v.

**Jeremy L. BANKS, Appellant.**

No. SC 87921.

Supreme Court of Missouri,
En Banc.

Feb. 27, 2007.

Susan L. Hogan, Office of the Public Defender, Western Appellate/PCR Division, Kansas City, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Shawn L. Naccarato, Asst. Atty. Gen., Jefferson City, for respondent.

PER CURIAM[1].

A jury found Jeremy L. Banks guilty of first-degree murder and armed criminal action for killing Alvon Turner on September 14, 2003, in Kansas City. Banks does not challenge the sufficiency of the state's evidence against him. He correctly claims the prosecuting attorney's rebuttal closing argument referring to Banks as the "Devil" was improper and prejudicial. The judgment is reversed, and the case is remanded.

1. This Court transferred this case after an opinion by the Court of Appeals, Western District. *Mo. Const. article V, section 10.* The Honorable Ronald R. Holliger filed a dissent in that case, and his opinion, in large part, has been adopted by this Court.

### The Argument, Objection, and Ruling

In his closing argument, Banks argued to the jury that the witnesses to the shooting, which occurred at a "crack house," were drug users, and he questioned their ability to perceive accurately. He noted that police detectives "weren't there. They don't know what happened.... It is logical that all the detective[s] had is based on what people tell [them], outside of scientific evidence which they didn't even try to get [in this] case. So the State's case hinges upon the believability of [the state's witnesses at the scene]."

The prosecuting attorney responded in rebuttal:

[Police detectives] didn't just go on the word of a crack addict. They had several witnesses.

And, ladies and gentlemen, when the scene is set and held[2] and we have to go and catch the Devil, there are no angels as witnesses. This is Hell. He is the Devil. They aren't angels. He is guilty beyond a reasonable doubt.

Banks objected: "Calling my client a devil is improper argument that was intentional and calls for a mistrial." The prosecutor responded that she was not name-calling: "It's an analogy. I set up the analogy properly." Banks retorted that "the analogy [is] improper when you say somebody is Satan." The circuit court overruled Banks' objection.

### The Prosecutor's Responsibility

The comment to Rule 4–3.8 provides:

A prosecutor has the responsibility of a minister of justice and not simply that of

2. Perhaps the prosecutor actually said "set in Hell" rather than "set and held" as recorded in the transcript.

an advocate. This responsibility carries with it specific obligations to see that the defendant is accorded procedural justice and that guilt is decided on the basis of sufficient evidence.

## Deterring a Prosecutor's Improper Argument

Courts and legal scholars have struggled with how to effectively address improper prosecutorial forensics. Some might argue that appellate courts' seemingly more temperate view toward personal attacks has encouraged prosecutors to take more chances and trial courts to see less need to strongly intervene because of a belief that prejudice will seldom be found. One court has said:

> [A]lthough we confess our inadequacy to probe the mental processes of counsel, we would be less than realistic if we did not recognize (without regard to the case before us) that sometimes counsel, encouraged by the demonstrated reluctance of courts to declare mistrials or grant new trials for improper argument, deliberately transcend the bounds of legitimate argument, conscious of the possibility that objection may be made and sustained, but smug in the knowledge that the objectionable matters may not be effectively withdrawn and that their poisonous influence may not be entirely neutralized.

*Hildreth v. Key*, 341 S.W.2d 601, 616 (Mo. App.1960). In other words, the risk is minimal and deemed worth taking. Professor Albert W. Alschuler wrote in 1972 that he and others over a twenty-year period had not uncovered a single case in which a prosecutor had been disciplined for forensic misconduct. Albert W. Alschuler, *Courtroom Misconduct by Prosecutors and Trial Judges*, 50 Tex. L.Rev. 629, 670–71 (1972). Professor Alschuler also found in his own study and that of

another law school not a single contempt citation of a prosecutor for forensic misconduct. *Id.* at 674. The only realistic deterrent to improper conduct is through the trial and appellate courts.

## The Argument in this Case was Improper

■ In this case, the prosecutor's attack was wrong, unprofessional, and demeaning to a proper sense of justice and the legal system. As this Court previously held, calling Banks the "Devil" is improper. *State v. Johnston*, 957 S.W.2d 734, 750 (Mo. banc 1997). The trial court's failure to sustain the objection to the argument compounds the error.

There is a long history of precedent dealing with ad hominem attacks generally and this particular argument specifically. As early as 1890 this Court said that calling the defendant the devil "was mere personal abuse of the prisoner, and *not to be tolerated in any tribunal calling itself a court of justice.*" *State v. Young*, 99 Mo. 666, 12 S.W. 879, 884 (1890) (emphasis added). In *State v. Barrington*, 198 Mo. 23, 95 S.W. 235, 257 (1906), the trial court, *sua sponte*, directly and severely rebuked counsel in front of the jury, even referring to counsel by name. *Id.* In light of the trial court's corrective actions, the Court said that the prosecutor's language "was not of that low order of abuse and denunciation of defendant as indicated in the decisions which this court has held prejudicial error." *Id.* In other words, the trial judge's rebuke of the prosecutor cured the prejudice because the remark was not "so low" that a mistrial was required. An argument could be so improper that not even the sustaining of an objection and a purportedly curative instruction could cure the prejudice.

This Court returned to this issue in 1919 when a woman was convicted of running a

bawdyhouse. *State v. Goodwin*, 217 S.W. 264, 266 (Mo.1919). The prosecutor told the jury that she "has the devil in her heart" and "is guilty of white slavery." *Id.* The trial court sustained the objection. Nevertheless, this Court reversed, saying:

> The action of the court was wholly insufficient. Trial judges are clothed with abundant authority to conduct the proceedings of their courts with dignity and to prevent appeals to mere passion and prejudice, and it is their duty on proper occasion to exercise that authority with salutary vigor.

*Id.* at 267. The Court held that in the absence of a strong rebuke, prejudicial error occurred. *Id.*

█ The State insists that the remark in this case was proper and was supported by the evidence. This Court disagrees. The State points to no evidence that Banks was in fact the devil and the crime scene was hell. The remark was pure hyperbole, an ad hominem personal attack designed to inflame the jury. "The prosecutor may prosecute with vigor and strike blows but he is not at liberty to strike foul ones." *State v. Burnfin*, 771 S.W.2d 908, 912 (Mo. App.1989).

█ "Trial courts have wide discretion in controlling closing arguments, but they abuse that discretion when they allow plainly unwarranted and injurious arguments." *State v. Hahn*, 37 S.W.3d 344, 356 (Mo.App.2000). It would have been enough for the prosecutor to say that the state does not find angels as witnesses in crack houses. But the closing argument goes on to compare Banks to these admittedly non-angelic witnesses. And the intended comparison is clear: Banks is even worse (a person having the worst of character) than the state's witnesses. The trial court erred when it overruled Banks' objection to the improper argument.

### The Defendant was Prejudiced

█ There remains the issue of prejudice in this case. Where a trial court has abused its discretion with respect to improper closing arguments, reversal is warranted only upon showing that the defendant was prejudiced. *State v. Williams*, 24 S.W.3d 101, 124 (Mo.App.2000). Stated otherwise, "even if the prosecution's argument was improper, reversal is appropriate only if it is established that the comment of which Appellant complains had a 'decisive effect on the jury's determination.'" *State v. Armentrout*, 8 S.W.3d 99, 111–12 (Mo. banc 1999) (quoting *State v. Hall*, 982 S.W.2d 675, 683 (Mo. banc 1998)).

█ The State correctly states that overwhelming evidence of guilt may lead an appellate court to find that a defendant was not prejudiced by trial court error. *State v. Beal*, 966 S.W.2d 9, 14 (Mo.App. 1997). In this case, that argument ignores that Banks' principal defense was the credibility and unreliability of the witnesses. The State was required to seek a writ to produce at least two of its witnesses. The State had to impeach several of its own witnesses with prior statements. Several witnesses testified that they and others at the scene were very drunk or high on drugs. The State was forced to call a police officer to testify that he did not believe any of the witnesses to be drunk or under the influence of drugs at the time of their questioning on the day of the shooting.

In addition, there were numerous other inconsistencies in the statements or trial testimony of the witnesses. The State spent some time in its opening argument justifying these inconsistencies and suggesting that the witnesses were afraid of Banks (because, argued the State, "He kills snitches"). A juror was excused even

before the final argument because he expressed fear of retaliation based on testimony during the trial. There was evidence that the house where the shooting occurred was a crack house and also a house of prostitution.

Given these circumstances, the credibility and reliability of the witnesses and their ability to accurately perceive and remember the events of that day were substantial issues.

■ Although in addressing the sufficiency of the evidence this Court views the evidence in the light most favorable to the State, *State v. Kusgen,* 178 S.W.3d 595, 596 (Mo.App.2005), it does not do so when evaluating the potential prejudice of trial error, *see State v. Leisure,* 796 S.W.2d 875, 880 (Mo. banc 1990) ("Error, which in a close case might call for reversal, may be disregarded as harmless when the evidence of guilt is strong.").

In sum, the State's own evidence showed that the location of the crime and the witnesses it was forced to rely upon were unsavory at best. The State said this "world is hell," referring to the scene and the witnesses. To strengthen the state's witnesses, the prosecutor directly called Banks the chief of this world of hell: "the devil himself." In so doing, the State failed to distinguish proper and legitimate argument from personal and inflammatory attack. The trial court should have promptly and firmly rebuked counsel in front of the jury. The court's failure to do so prejudiced Banks.

## Professional Behavior

Judges, lawyers, and observers have for a number of years increasingly decried the incivility between lawyers themselves and towards parties and witnesses in judicial proceedings. The use of vituperative language, if not acceptable, has become too tolerated. In trial, counsel sometimes seem to believe that zealous advocacy permits, if not demands, that opponents be personally derided and that cases should be decided by appeals to prejudice, fear, envy, and bias, regardless of whether those emotions have anything to do with the facts and law of the case. Rhetoric is too often substituted for logic and reason.

Although every witness, party, opposing counsel, and other participant in a trial is a victim and injured by such conduct, the ultimate victim is our system of justice itself. Respect for the rule of law and our system of administering it depend upon public trust and confidence, whether it is in civil or criminal cases. Historically fundamental to that system has been the concept that individuals and corporations are tried (civilly or criminally) for their acts and not for simply who they are (or are alleged to be). It is tragic that the common observation of laymen is that it is just lawyers being lawyers.

Although courts cannot provide the sole solution, when one asks what courts have done to stem this behavior, the answer too often is "precious little." Judges and lawyers and sometimes both decry this behavior and urge some answer. Judges criticize lawyers for their behavior. Lawyers criticize judges for tolerating it or for not taking firm actions to stop it. Appellate courts frequently play their role as well by finding no abuse of discretion or no prejudice,[3] or by describing as a tactical decision defense counsel's failure to object, without admitting that counsel may not be willing to object where there is little chance of it being sustained or of any meaningful relief being granted on appeal. All who participate in the trial of a case are reminded, just as the prosecutor is reminded by the

**3.** See, e.g., *State v. Healey,* 562 S.W.2d 118, 130 (Mo.App.1978).

comment to Rule 4–3.8, that juries are to decide cases on the evidence presented-not appeals to unreasoned emotion or name-calling.

## Conclusion

The judgment is reversed, and the case is remanded.

All concur.