**STATE of Missouri, Respondent,**

v.

**Jeremy Jacob BUCH, Appellant.**

**WD 79336**

Missouri Court of Appeals,
Western District.

OPINION FILED: March 21, 2017

Richard Starnes, Jefferson City, MO, for Counsel for Respondent.

Ellen Flottman, Columbia, MO, for Counsel for Appellant.

Before Division Four: Mark D. Pfeiffer, Chief Judge Presiding, Thomas H. Newton, and Anthony Rex Gabbert, Judges

Thomas H. Newton, Judge

Mr. Jeremy J. Buch appeals his convictions by a Livingston County jury for the class C felonies of second-degree burglary, § 569.170, stealing, § 570.030, and unlawful possession of a firearm by a felon, § 571.070.[1] He was sentenced by the court as a prior offender to seven years' imprisonment for burglary, seven consecutive years' imprisonment for stealing, and seven concurrent years' imprisonment for unlawful possession, for a total of fourteen years in the Department of Corrections. His sentence for stealing must be reversed under *State v. Bazell*, 497 S.W.3d 263 (Mo.

banc 2016). He also challenges photographs introduced at trial from an unmonitored surveillance camera, claiming that they were admitted without a proper foundation. We affirm in part, reverse in part, and remand for resentencing.

Mr. John Tipton, who resides in a rural part of Livingston County, Missouri, left his home on Friday, August 1, 2014, for a week-long vacation.[2] Before he left, he set up a Bushnell game-trail camera to record activity on the driveway adjacent to his home. Mr. Tipton's son Skyler and his son's friend periodically stopped by to check the home and water plants. Late on Monday, August 4, 2014, Skyler noticed that a window was open. He called his dad and asked where Mr. Tipton kept his firearms and then walked through the house, as instructed, to explore a number of hiding places. Skyler also checked an outside shed and noticed that it appeared the door had been kicked in. At that point, because a number of guns were missing, he phoned the sheriff's department, and Detective Eric Menconi responded to the call and took Skyler's statement.

The next day, Mr. Tipton phoned the sheriff's department and told Deputy Jacob Peterson about the game-trail camera. The deputy went to the Tipton home and retrieved the camera or its sim card on which images had been recorded. Because Mr. Tipton had removed all the images on the sim card before he left, the only images on the card when the detective viewed them on his computer were those recorded from Friday, August 1, 2014, to

---

1. Statutory references are to RSMo 2000 as updated by cumulative supplement until August 2014, when the offenses occurred.

2. While we view the evidence and all reasonable inferences in the light most favorable to the jury's verdict in assessing its sufficiency, we do not do so "when evaluating the poten-

tial prejudice of trial error." *State v. Banks*, 215 S.W.3d 118, 122 (Mo. banc 2007). We do, however, examine whether the evidence of guilt is overwhelming, or the case is close, to assess the prejudicial effect of the alleged error. *Id.* Accordingly, this factual narrative focuses on the properly admitted evidence of guilt.

Tuesday, August 5, 2014. Because Mr. Tipton had not set the camera's date and time stamp, the dates and times appearing on each image were not accurate, although time intervals were discernible. Deputy Peterson identified from the images he viewed on the sim card a number of photographs that were introduced into evidence. They depict a red Mercury SUV with distinctive trim and tires pulling into the driveway in broad daylight. At least two individuals can be seen inside and outside the vehicle. One of the individuals is bald and of medium build, and also has "sleeve" tattoos on his left arm. None of the seven missing firearms can be seen in the photographs from the camera, although one image appears to show an individual leaning into the rear of the vehicle with the back hatch door open. Deputy Peterson indicated that other images had been captured by the camera, including Skyler's vehicle and Detective Menconi's vehicle. The sim card itself was unavailable because it had become corrupted before the trial took place.

Deputy Peterson testified that he saw a similar red Mercury SUV parked across the street from his home and an individual standing on the porch with characteristics similar to one of the individuals in an image taken from the sim card—bald and tattooed. The deputy introduced himself and learned that his neighbor was Mr. Buch.[3] He gave Mr. Buch his Miranda warnings and took him to the sheriff's department for questioning. Mr. Buch at first denied any involvement in the crime, but then confessed and indicated that the stolen guns could be located at his residence. The sheriffs went to Mr. Buch's residence with a search warrant and found six of the seven guns stolen from Mr.

Tipton's home. The seventh gun was found at the home of a second participant, Mr. Timothy Newton, who, while on parole for the crime, testifed against Mr. Buch, identifying him as the man who invited Mr. Newton to participate in the crime and as one of the individuals in the game-trail camera's images.[4]

The State charged Mr. Buch in a second amended information with the crimes indicated above. Mr. Buch filed motions in limine seeking to exclude photographs taken from the game-trail camera, claiming, among other matters, that they lacked an adequate foundation and that multiple known and unknown images were also on the sim card, but were not retrieved, and thus the intended exhibits "do not provide the whole story of what happened." The motions were argued before trial, and the court took them under advisement, noting that the images would likely be admitted if the State laid a proper foundation. The circuit court admitted the photographs over Mr. Buch's objection during trial, agreeing with the State that an adequate foundation had been laid. Mr. Buch introduced no testimony in his own defense, and the jury found him guilty of the crimes charged. Mr. Buch filed a motion for judgment of acquittal notwithstanding the verdict or for new trial, including a claim that the court erred in overruling his motions in limine and admitting the game-camera photographs over his objection. He argued that the photographs "did not accurately reflect a burglary and were more prejudicial than probative," thus violating his right to a fair trial. The circuit court denied the motion, sentenced him, and this appeal followed.

---

3. Mr. Buch is the step-nephew of Mr. Tipton's wife, and some members of Mr. Tipton's family knew about the planned vacation.

4. No other witnesses could conclusively identify Mr. Buch from the sim-card images, because his face is not fully shown in any of them.

## Legal Analysis

 The first point challenges the sentence imposed for stealing. Because Mr. Buch filed his brief eleven days before the Missouri Supreme Court decided *Bazell*, he does not cite the case, but he argues that he could not be sentenced according to the class C felony enhancement provision of section 570.030 under the statute's plain meaning. His case was on direct appeal when *Bazell* was decided, and the State agrees that the case is on all fours as it involved stealing firearms and the same version of the statute that was in effect when Mr. Buch committed the crime.[5] We agree with Mr. Buch and the State that the case must be remanded for resentencing on Count II for stealing within the class A misdemeanor range of punishment. This point is granted.

 The second point challenges the circuit court's discretionary decision to admit the game-camera photographs at trial. Mr. Buch argues that a proper foundation was not established "by testimony from personal observation" and the sheriff's department selectively retrieved photos from one day out of a four-day period "that did not show the commission of any element of the charged crimes, while neglecting other relevant photographic evidence available on the same game camera." He contends that their admission violated his right to a fair trial and due process.

We have described a trial court's discretion in the admission of photographs as "broad." *State v. Tillman*, 289 S.W.3d 282, 294 (Mo. App. W.D. 2009). We will not overturn its decision "absent an abuse of discretion." *Id.* "A trial court abuses its discretion when a ruling 'is clearly against the logic of the circumstances then before the court and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration.'" *State v. Davis*, 107 S.W.3d 410, 422 (Mo. App. W.D. 2003) (quoting *State v. Brown*, 939 S.W.2d 882, 883 (Mo. banc 1997)). Further, "'[a] conviction will be reversed due to admission of improper evidence only if the defendant proves prejudice by showing a reasonable probability that in the absence of such evidence the verdict would have been different.'" *Tillman*, 289 S.W.3d at 294 (quoting *State v. Thompson*, 112 S.W.3d 57, 63 (Mo. App. W.D. 2003)).

Even if the circuit court abused its discretion in admitting the game-trail camera photographs, we could not reverse the conviction because Mr. Buch fails to show that the purported error was prejudicial or that a different verdict would have been reasonably probable in the absence of the photographs. Without them, the evidence shows that firearms were stolen from Mr. Tipton's home while he was on vacation. Another participant in the crime testified that Mr. Buch had planned to take the firearms, drove him to Mr. Tipton's home, and took the firearms. Mr. Buch confessed to the crime and told the sheriff's department where the firearms could be found. The firearms taken from Mr. Tipton's home were found where Mr. Buch said they would be found, that is, in his residence. The evidence of guilt could not be much clearer. Accordingly, this point is denied.

## Conclusion

Because Mr. Buch was sentenced for stealing under a statutory interpretation

---

5. See *State v. Hayes*, 23 S.W.3d 783, 791 (Mo. App. W.D. 2000), for the principle that "[w]here cases are silent on the retrospective application of their holdings and if the holdings pertain to substantive matters, they are applied retrospectively." Also note that we have applied *Bazell* retrospectively, where, as here, the issue has not been preserved and is reviewed for plain error. *State v. Metternich*, No. WD79253, 2016 WL 7439121, at *2 (Mo. App. W.D. Dec. 27, 2016).

overturned by the Missouri Supreme Court while his appeal was pending, we reverse his sentence on that count and remand for the circuit court to resentence him for a class A misdemeanor. In the absence of any prejudice from the possible erroneous admission of photographs that accurately reproduced images taken of the crime scene by an unmonitored surveillance camera, we otherwise affirm his convictions.

Mark D. Pfeiffer, C.J., and Anthony Rex Gabbert, J. concur.