STATE of Missouri, Respondent,

v.

Darryl P. MOLETT, Appellant.

WD 79888

Missouri Court of Appeals, Western District.

OPINION FILED: September 26, 2017

Carol Jansen, Columbia, MO, Counsel for Appellant.

Mary Moore, Jefferson City, MO, Counsel for Respondent.

Before Division One: James Edward Welsh, P.J., Lisa White Hardwick, and Gary D. Witt, JJ.

James Edward Welsh, Presiding Judge

Appellant Darryl Molett ("Molett") appeals from the judgment of the Circuit Court of Adair County convicting him of domestic assault in the second degree, section 565.073,[1] felonious restraint, section 565.120, and violation of an order of protection, section 455.010. The convictions arise out of the relationship between Molett and his former girlfriend (the "Victim"),[2] with whom Molett has a child. Molett raises two points on appeal challenging evidentiary rulings by the circuit court. We affirm.

### Factual Background [3]

The Victim and Molett met each other in late 2007 and eventually resided together. They had a child who was born in May of 2013. After the birth of their child, Molett and the Victim's relationship deteriorated. Towards the end of November 2014, an incident occurred in their shared home in

---

**1.** All statutory citations are to RSMo 2000 as updated through the December 31, 2014, cumulative supplement, unless otherwise indicated.

**2.** The Court will refer to Molett's former girlfriend as the "Victim" and will not refer to the name of their child to comply with section 566.226.

**3.** Evidence is reviewed in the light most favorable to the verdict. *State v. Taylor,* 298 S.W.3d 482, 491 (Mo. banc 2009).

which Molett hit the Victim, pushed her to the floor, and displayed a pocket knife. Law enforcement was called, and Molett was removed from the home. The Victim sought and obtained a full order of protection against Molett because she was afraid that Molett would hurt her or their child. The full order of protection was granted by the court on January 12, 2015.

After the full order of protection was granted, the Victim and Molett continued to have contact to try to provide a stable environment for their child. In the third week of January 2015, Molett and the Victim met at Cash Advance, a short term loan company, so that the Victim could make a payment on Molett's behalf. The Victim did not have the necessary funds, which angered Molett. Molett followed the Victim to her car and berated her. Molett hit the Victim in the head a couple of times and grabbed a piece of luggage and threw it at the Victim, hitting her in the face. The incident was investigated by the Kirksville Police Department.

The Victim discovered that Molett had a new girlfriend and tried to end their relationship on March 6, 2015, which again angered Molett. On March 17, 2015, after returning home from a family event, the Victim found Molett at her residence uninvited. Molett met the Victim at her car and immediately took her keys and cellphone. Molett took the child and led the Victim inside her residence. The Victim testified that she could not call for help because she did not have her phone and she was not willing to flee because Molett had the child. Molett expressed his desire to be a family and tried to hug the Victim, but she refused. Molett spun the Victim around so that she was facing him and head-butted her in the face. The Victim collapsed onto the floor and lost consciousness.

The Victim regained consciousness shortly thereafter, around 3:00 p.m., and discovered that she had blood on her face and on her hands. The Victim was terrified. Molett did not call for help, take the Victim to the hospital, or take any other action to help the Victim. The Victim convinced Molett to take her to the hospital around 5:00 p.m., but Molett told the Victim that she had to report that she received her injuries from falling down the stairs.

Molett drove the Victim and the child to the hospital, but when they arrived Molett insisted on keeping the child in the car. The Victim refused to leave the child in the car with Molett. A security guard arrived who was followed by a police officer, Officer Tami O'Haver ("Officer O'Haver"). The Victim told Officer O'Haver that she received her injury when Molett head-butted her. Molett told the police officer that he did not hit the Victim and, while he was at her residence when the injury occurred, he did not know how the Victim got injured but thought she may have fallen down the stairs.

The Victim was seen by a nurse and doctor in the hospital emergency room, both of whom observed a laceration and bruising around the Victim's left eye. The Victim did not stay for treatment, however, as she did not have health insurance and knew the cost would be expensive.

Based on this evidence, the jury returned guilty verdicts for domestic assault in the second degree, felonious restraint, and violation of an order of protection. Molett received consecutive sentences of five years in the Department of Corrections for domestic assault and felonious restraint, and a concurrent sentence of one year in the county jail for violation of a protective order.

Molett's two points on appeal both pertain to evidentiary rulings at trial regarding testimony by Officers O'Haver and

Juan Chairez ("Officer Chairez"). Both officers testified about relationships involving a "cycle of violence", and Officer O'Haver testified that the Victim was a "battered spouse" in that the Victim had "suffered physical and emotional abuse over time." Additional information regarding these objections will be detailed under their relevant points on appeal below.

## Point One

In Point One on appeal, Molett argues the circuit court abused its discretion in permitting Officers O'Haver and Chairez to testify over his objections that his relationship with the Victim included a "cycle of violence" in that in the context of the trial the testimony was particularized evidence commenting on the credibility of the Victim's allegations against Molett, thereby invading the province of the jury.

Prior to addressing the substance of the arguments on appeal, we must first address whether the issue has been properly preserved for appellate review. The testimony, and objections thereto at trial, are provided below.

Both Officers O'Haver and Chairez testified regarding relationships that include a "cycle of violence." Officer O'Haver testified as follows:

Q. And how many domestic violence investigations have you conducted?

A. I couldn't tell you the number. Several.

Q. Are you then familiar with what is called a "cycle of violence"?

A. Yes.

Q. And isn't part of that cycle of violence that sometimes domestic violence victims change their story?

A. It has been known to happen, yes.

Q. And is part of the reason that a victim might change their story is that they are scared of the suspect?

A. That can be.

[DEFENSE COUNSEL]: Objection.

THE COURT: I'm sorry.

[DEFENSE COUNSEL]: Objection, Your Honor.

THE COURT: Counsel, approach.

[Proceedings at bench:]

THE COURT: What is your objection?

[DEFENSE COUNSEL]: First, it doesn't seem to be a foundation for the line of questioning. It's merely a cycle of violence. What is a "cycle of violence"? Is it something she has been trained on? Something she would have any specific knowledge of? It's speculation on a morphis [sic] idea that she knows what she is talking about.

THE COURT: Sustained without foundation.

[Proceedings in open court:]

Q. Officer O'Haver, tell me what the cycle of violence is?

A. The cycle of violence is where you have a relationship between two individuals. You will have an incident of violence that will occur, then you will have a period of time where the individual that caused the violence will apologize to the person that they assaulted. That individual will then forgive them. Everything will be fine, and then the cycle just kind of repeats itself. It just kind of goes over and over.

Q. And is that something you've received training in?

A. I have studied it before.

Q. And based on what you've studied and your understanding of the cycle of violence, does the relationship between the [Molett] and [the Victim] fit in the cycle of violence?

[DEFENSE COUNSEL]: Objection.

THE COURT: Overruled.

A. It does.

Q. And is part of that cycle of violence involving victims that change their story between when it happened and at a later date?

A. It can, yes.

Q. And one of the reasons that a victim might change their story is that they are scared of the abuser?

A. It can be, yes.

Officer Chairez testified as follows:

Q. Officer, you received training in domestic violence investigation, is that true?

A. Yes, sir.

Q. So through that training are you familiar with the cycle of violence?

A. Yes, sir.

[DEFENSE COUNSEL]: Objection. May we approach?

THE COURT: You may.

[Proceedings at bench:]

[DEFENSE COUNSEL]: This is way outside the scope of direct examination, which was his meeting with her.

THE COURT: I don't consider that objection in this scenario. If they want to talk about things that are relevant to the case they are entitled to do that. If that is the basis for your objection it is overruled.

[DEFENSE COUNSEL]: And foundation in regards to this officer.

[PROSECUTION]: He testified that he had training in that.

THE COURT: I don't think we've gotten to the point. He just asked him if he's familiar with it. We do need to lay some foundation, but I don't think we are to the point of objecting on that basis, until we have some additional questions asked. Overruled at this time. Certainly, if you want to renew that objection you may do so.

[DEFENSE COUNSEL]: Very good. Thank you.

[Proceedings in open court:]

Q. So, Officer, part of your training involves the cycle of domestic violence?

A. Yes.

Q. So you are familiar with the ebbs and flows of a relationship?

A. Yes.

Q. As it relates to domestic violence?

A. Yes.

Q. Isn't it true that one of the symptoms of the cycle of violence or an abused person in a cycle of violence is that they will change their story?

A. Yes.

Q. And isn't it true that one of the reasons that an abused person in the cycle of violence might change their story is because they are afraid of the abuser?

A. That could be one of the reasons, yes.

▆▆▆▆ When challenging the admission of evidence,

" 'a specific objection is required when the evidence is offered at trial to preserve the issue for appellate review.' " *State v. Evenson,* 35 S.W.3d 486, 491 (Mo. App. S. D. 2000) (quoting *State v. Cardona–Rivera,* 975 S.W.2d 200, 203 (Mo. App. S.D. 1998)). " 'To preserve an objection to evidence for review, the objection must be specific, and the point raised on appeal must be based upon the same theory.' " *Id.*

*State v. Bacon,* 156 S.W.3d 372, 382 (Mo. App. 2005). As our Supreme Court has explained,

[t]o preserve a claim of error, counsel must object with sufficient specificity to apprise the trial court of the grounds for the objection. Our rules for preservation of error for review are applied, not to

enable the court to avoid the task of review, nor to make preservation of error difficult for the appellant, but, to enable the court—the trial court first, then the appellate court—to define the precise claim made by the defendant. *State v. Amick*, 462 S.W.3d 413, 415 (Mo. banc 2015) (internal quotations and citations omitted). "Further, when the objection could be made during trial, raising the issue for the first time in a motion for new trial is insufficient to preserve the alleged error." *State v. Walter*, 479 S.W.3d 118, 123 (Mo. banc 2016).

■ Regarding Officer O'Haver's testimony, Molett objected specifically on the ground of foundation, which was sustained and apparently cured to his satisfaction by the State as no further objection was made and the claim is not asserted on appeal. Molett made one further objection when Officer O'Haver was asked whether she believed Molett and the Victim's relationship "fit in the cycle of violence." No specific basis for the objection was provided by Molett. At no point was the basis for the objection asserted now on appeal-that the testimony regarding the cycle of violence between Molett and the Victim invaded the province of the jury by improperly commenting upon the Victim's credibility-ever presented to the circuit court. This is not sufficient to preserve the issue on appeal. Regarding Officer Chairez's testimony, the only objections made by Molett pertained to the questioning being outside the scope of direct examination and foundation. Again, neither of these issues are raised on appeal, and no specific objection was made at trial on the basis now argued on appeal. Molett has not identified any other basis for this Court to believe that the circuit court understood his objections were made on the basis now asserted on appeal. Accordingly, we conclude that Molett has failed to preserve

for appellate review either claim of error asserted in Point One because of his failure to object at trial with sufficient specificity. *See Amick*, 462 S.W.3d at 415.

Because the claims made now on appeal were not properly preserved for appellate review, they can be reviewed only for plain error. *See Walter*, 479 S.W.3d at 123.

■ Rule 30.20 authorizes this Court to review, in its discretion, "plain errors affecting substantial rights ... when the court finds that manifest injustice or miscarriage of justice has resulted therefrom." Our Supreme Court has established a threshold review to determine if a court should exercise its discretion to entertain a Rule 30.20 review of a claimed plain error. First, we determine whether or not the claimed error "facially establishes substantial grounds for believing that 'manifest injustice or miscarriage of justice has resulted[.]'" *State v. Brown*, 902 S.W.2d 278, 284 (Mo. banc 1995) (quoting Rule 30.20). If not, we should not exercise our discretion to conduct a Rule 30.20 plain error review. If, however, we conclude that we have passed this threshold, we may proceed to review the claim under a two-step analysis pursuant to Rule 30.20. In the first step, we decide whether plain error has, in fact, occurred. *State v. Baumruk*, 280 S.W.3d 600, 607 (Mo. banc 2009). "All prejudicial error, however, is not plain error, and plain errors are those which are evident, obvious, and clear." *Id.* (citations and internal quotation marks omitted). In the absence of evident, obvious, and clear error, we should not proceed further with our plain error review. If, however, we find plain error, we must continue to the second step to consider whether or not a miscarriage of justice or manifest injustice will occur if the error is left uncorrected. *Id.* at 607-08.

■ The circuit court has broad discretion to decide whether or not to admit

or exclude testimony. *State v. Forrest*, 183 S.W.3d 218, 223 (Mo. banc 2006). The appellate courts will not reverse evidentiary rulings of the trial court absent a clear abuse of discretion or a ruling so prejudicial that it deprives a party of a fair trial. *Id.* at 223-24. We conclude that none of the claims in Point One meet the initial threshold of plain error review. There is no indication in the record that these evidentiary rulings facially establish substantial grounds for believing that a manifest injustice or miscarriage of justice occurred. We, therefore, decline to exercise our discretion and extend further plain error review.

Point One is denied.

### Point Two

■ In Point Two on appeal, Molett argues the circuit court abused its discretion in permitting Officer O'Haver to characterize the Victim as a "battered spouse" over his objection in that the State introduced the evidence not to explain the Victim's behavior but to express an opinion on Molett's guilt to show that Molett made an implied threat against the Victim necessary for a conviction of felonious restraint, invading the province of the jury.

At trial, the State asked Officer O'Haver whether the Victim fit the profile of a battered spouse. Molett objected to this line of questioning, arguing in part that the questioning was more prejudicial to Molett than probative of the issues in the case. Part of the justification offered by the State for this line of questioning was that it was probative of the Victim's state of mind as an element of the offense of felonious restraint. A question for the jury was whether the restraint was by means of "forcible compulsion", which includes either an express or *implied threat* that places a person in reasonable fear of death, serious physical injury, or kidnap-

ping. The circuit court overruled Molett's objection. After establishing that it was Officer's O'Haver's opinion that Molett was the dominant partner in the relationship, Officer O'Haver proceeded to testify as follows:

Q. Officer O'Haver, is there a typical profile for a battered spouse that they display typical characteristics?

A. I don't know that the word "typical" would be what I would use. A good way to define it is just an individual that has suffered physical and emotional abuse over time.

Q. Do you see that in [the Victim]?

A. Yes.

In closing argument, the State referred to Officer's O'Haver's testimony to support a finding of forcible compulsion as follows:

Also Officer O'Haver sat up here and we talked about the cycle of violence. We talked about primary physical aggressors. Officer O'Haver told you that she determined the defendant was the primary physical aggressor in this case, but she also told you that the defendant was the dominant one in this relationship. It was through exercising that dominance and that implied threat, "I will hurt you or I will hurt [the child]", that amounts to forcible compulsion. Of course it was without her consent. She didn't want to stay at home. She wanted to go to the hospital. She knew she needed medical attention.

■ "A trial court has broad discretion to admit or exclude evidence," and we will reverse its decision only for a clear abuse of discretion. *Forrest*, 183 S.W.3d at 223. A court abuses its discretion when its ruling "is clearly against the logic of the circumstances and so unreasonable as to indicate a lack of careful consideration." *Id.* Additionally, this Court does not review for mere error but will only reverse if

the error was so prejudicial that it deprived Molett of a fair trial. *Id.* at 223-24. "Trial court error is not prejudicial unless there is a reasonable probability that the trial court's error affected the outcome of the trial." *Id.* at 224.

The challenged testimony of Officer O'Haver was that the Victim was a "battered spouse" in that, in her opinion, the Victim was "an individual that has suffered physical and emotional abuse over time." The inference must be that because the Victim had suffered physical and emotional abuse over time, it was reasonable that she felt an implied threat of further harm should she have attempted to leave her home to seek medical treatment after Molett head-butted her. As set forth above, the State in closing argument did not even refer to the "battered spouse" testimony from Officer O'Haver. The Court sees no error in the trial court's admission of this evidence. The evidence was relevant to show the Victim's state of mind, which was necessary to prove an element of felonious restraint. That the Victim had characteristics identifying her as a "battered spouse" does not comment upon the guilt or innocence of Molett to the crimes charged. It is a comment upon the characteristics of the Victim and provides relevant evidence regarding whether the Victim as a battered spouse felt an implied threat from Molett.

However, assuming *arguendo* that the evidence should have been excluded, Molett would still not be entitled to relief as he cannot demonstrate he was prejudiced by the admission of this evidence. The burden is on Molett to show not only circuit court error in the admission of evidence but also prejudice. *See State v. Thompson,* 112 S.W.3d 57, 63 (Mo. App. 2003). "[A] conviction will be reversed due to admission of improper evidence only if the defendant proves prejudice by showing a reasonable probability that in the ab-

sence of such evidence the verdict would have been different." *Id.*; *see also State v. Buch,* 513 S.W.3d 412, 415 (Mo. App. 2017).

The felonious restraint charge was based on the testimony of the Victim that after Molett head-butted the Victim in her home, from approximately 3:00 p.m. to 5:00 p.m., after she regained consciousness the Victim was not free to go to the hospital as Molett had taken her car keys and the Victim was afraid to leave without their baby. The State argued that the Victim felt an implied threat from Molett that if she tried to leave, Molett would hurt the Victim again or hurt the baby. The Victim testified that during this time she felt threatened and that her life was in danger. Officer O'Haver's testimony that the Victim was a battered spouse in that she "suffered physical and emotional abuse over time" was tangential and offered minor support for Molett's conviction of forcible restraint. Had the challenged testimony of Officer O'Haver been excluded at trial, there is no reasonable probability that the verdict would have been different. We also find that Molett has failed to meet his burden to demonstrate that he was prejudiced by the admission of this evidence.

Point Two is denied.

## Conclusion

The judgment of the Circuit Court is affirmed.

All concur.