Philip M. Hess, Presiding Judge *904 Introduction
Andrew Bullard ("Appellant") appeals from his judgment convicting him of child molestation in the first degree following a jury trial in the circuit court of St. Louis County arising out of a charge that Appellant knowingly subjected his friend's daughter, K.W. ("Victim"), to sexual contact between June 1, 2011 and October 31, 2012. Appellant raises three points on appeal. Appellant argues the trial court abused its discretion by: (1) admitting testimony from Victim's father ("Father") regarding photographs he saw on Appellant's phone in October 2012 that led him to no longer allow Appellant to be with his children unsupervised; (2) refusing to allow Lindsay Rogers, a friend of Appellant's since high school, to testify about Father's reputation for violence; and (3) overruling counsel's objection to the State's closing argument referencing "monster[s]" in "dark capes" in noting that child molesters look like everyone else in the community. We affirm.
Factual and Procedural Background
Appellant and Father were friends since high school, and Appellant introduced Father to his wife ("Mother")[1] . After graduating high school in 1998, Appellant moved away from the St. Louis area, serving in the Marine Corps from 1998 to 2002. Appellant returned to the St. Louis area in 2009, moving in with Father's family for six months before moving in with his family. By that time, Father and Mother had two children together, Victim, born in September 2007, and a son ("Son") who is about six years older than Victim. After moving out, Appellant would still frequently stay the night at Father's house, especially on weekends after drinking. Appellant would often sleep on a pullout couch, and Victim would sometimes sleep next to him.
In October 2012, Appellant, Father, and Son went on a dirt bike riding trip. While Appellant and Son were out riding, Father became bored and looked through Appellant's phone because his phone did not have service. Father found photographs on Appellant's phone that led him to no longer allow his children to be around Appellant unattended.
In November 2012, while sitting around a bonfire at a friend's house, a comment was made about someone being "a little weird." In response, Victim said she knew someone weirder than that. Father asked her who, and Victim whispered to Father, "Bullard." Father took Victim aside and asked her what she meant. Victim told Father that one night when she slept on the pullout couch next to Appellant, Appellant pulled down her underwear and tried to put his penis into her vagina. Father told Victim to go tell Mother what she told him. Father got in his car and drove towards Appellant's home.
On his way, Father called Appellant and asked him where he was. Appellant told Father he was at home and Father told him to stay there. Father then said, "explain to me why my daughter would tell me that a man that she's looked at like a second father, she loves, would tell me that she was sexually assaulted by you." Father testified that Appellant said he did not know what Father was talking about. Father *905 told Appellant that after finding the photos and hearing what his daughter said, he did not believe Appellant and wanted to be told the truth. Father testified Appellant then said he was sorry and, after being asked if he was admitting guilt, apologized again. Appellant denied apologizing on the phone. Father told Appellant to turn himself in the next day. Before arriving at Appellant's home, Father stopped to talk to Mother on the phone and Mother convinced him not to take matters into his own hands. Father turned around and returned to the friend's house. Father and Mother then called the police. Appellant sent Father the following text message the next day: "okay, I'm going in ... I know you're still mad at me. I just hope you can find it in your heart to forgive me some day." Appellant, however, did not turn himself in.
Mother took Victim to the hospital the next day. Victim told a social worker Appellant touched her "potty" with his "potty" more than once before she told him to stop. Victim said Appellant stopped touching her when she told him to stop. Victim pointed to the vaginal area on the diagram before her and said Appellant touched her there. Victim told the social worker it felt weird because, "his potty was inside my potty." Victim said that Appellant did this during a night when they were both sleeping on the pullout couch.
A forensic interviewer also interviewed Victim. Victim told the forensic interviewer Appellant put his "wiener" into her "potty." Victim identified body parts not to be touched and said Appellant touched her vagina. Victim again said this event happened on the pullout couch. Victim told the forensic interviewer she turned over and he stopped.
Appellant was arrested on December 10, 2012, and the State charged Appellant with first-degree child molestation. Before trial, Appellant moved to suppress all testimony about the photographs Father saw on Appellant's phone in October 2012 and Appellant's text message to Father sent on December 1, 2012. Appellant's motion to suppress was overruled, but the court ordered the contents of the photographs not be discussed.
The jury found Appellant guilty of first-degree child molestation. The trial court sentenced Appellant to ten years in prison. This appeal follows.
Standard of Review
Appellate review of the admission of evidence is for an abuse of discretion. State v. Primm , 347 S.W.3d 66, 70 (Mo. banc 2011). We will not disturb the trial court's decision unless the trial court's ruling is "clearly against the logic of the circumstances then before the court and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration." State v. Cofield , 95 S.W.3d 202, 205 (Mo. App. S.D. 2003). On direct appeal, this court will reverse only if there was an abuse of discretion and the resulting error was so prejudicial it deprived the defendant of a fair trial. State v. Naylor , 510 S.W.3d 855, 862 (Mo. banc 2017). Error is not prejudicial unless there is a "reasonable probability that the trial court's error affected the outcome of the trial." State v. Pickens , 332 S.W.3d 303, 318 (Mo. App. E.D. 2011).
An issue not preserved at trial will only be reviewed for plain error, "which requires a finding that manifest injustice or miscarriage of justice has resulted from the trial court error." State v. Johnson , 207 S.W.3d 24, 34 (Mo. banc 2006) (citing State v. Glass , 136 S.W.3d 496, 507 (Mo. banc 2004) ). A point is not preserved if the party's theory on appeal differs from the theory presented at trial.
*906 Johnson , 207 S.W.3d at 43. Where review is for plain error, an improper argument results in reversal only if the argument had a decisive effect on the jury. Id. (citing State v. Wren , 643 S.W.2d 800, 802 (Mo. banc 1983) ). The defendant bears the burden of proving the decisive effect of the argument. Id. (citing State v. Parker , 856 S.W.2d 331, 333 (Mo. banc 1993) ).
Discussion
I. Father's Testimony About the Photographs He Found on Appellant's Phone
In point one, Appellant argues Father's testimony about the photographs he found on Appellant's phone in October 2012 was inadmissible because it was irrelevant and allowed the jurors to speculate about the content of the photographs, potentially inflaming their passions and prejudices against Appellant. The State argues the testimony was admissible to demonstrate Appellant's access to Victim between June 1, 2011 and October 31, 2012, and to provide a complete and coherent picture of the circumstances around the offense. The State further argues, even if there was an error, admission of the evidence was not prejudicial.
Evidence of uncharged crimes or wrongful acts may not be admitted to show that the defendant has a propensity for such conduct.[2] Primm , 347 S.W.3d at 70. Such evidence may be admitted to provide a clear and coherent picture of the events in question when the evidence is part of the surrounding circumstances of the alleged crime. State v. Watson , 391 S.W.3d 18, 21 (Mo. App. E.D. 2012). The State is given latitude to present a complete and coherent picture of the charged offense. Id. (citing State v. Flenoid , 838 S.W.2d 462, 467 (Mo. App. E.D. 1992) ).
While the State has latitude, evidence must always be logically and legally relevant to be admissible. Watson , 391 S.W.3d at 21 (citing State v. Morgan , 366 S.W.3d 565, 581 (Mo. App. E.D. 2012) ). Evidence is logically relevant if it makes the existence of a fact consequential to determining the case more or less probable or if it corroborates evidence which is relevant or bears on key issues. State v. Barriner , 111 S.W.3d 396, 400-01 (Mo. banc 2003). Evidence is legally relevant if its probative value outweighs its costs, including prejudice and confusing the jury. Id. at 401. Whether the prejudicial weight of evidence outweighs its probative value is left to the discretion of the trial court. Watson , 391 S.W.3d at 21 (citing Flenoid, 838 S.W.2d at 468 ).
At trial, Father testified he discovered the photographs on Appellant's phone while Appellant and Son were out riding dirt bikes. Father testified he spoke *907 with Mother after discovering the photos and they decided to no longer allow Son and Victim to be alone with Appellant. Father also testified that when he called Appellant while driving towards his house, Appellant first denied Father's accusations, but Father told Appellant he did not believe Appellant's denials after seeing the photographs and hearing Victim's account. Father testified Appellant then stopped denying the accusation and apologized.
Father's testimony was logically relevant because it established one of the time-markers for when Appellant had unaccompanied access to Victim. It was also essential to provide a clear and coherent picture of these events. First, the alleged abuse occurred between June 1, 2011 and October 31, 2012. Father's testimony he decided to no longer allow his children to be alone with Appellant beginning in October 2012 explained the ending time marker for the charge and the time period during which Appellant could have committed the crime.
Second, the photographs were essential to understanding the events that happened after Victim reported the abuse to Father, and the events that transpired after Victim told Father Appellant assaulted her were central to the case. Father's testimony about the photographs helped explain Father's reaction when Victim reported the abuse and Appellant's response, including Father's testimony that Appellant apologized on the phone and the apologetic text message sent by Appellant the next day. A complete and coherent picture of these events could not be formulated without mentioning the photographs. The trial court did not abuse its discretion. Point one is denied.
II. Rogers' Testimony About Father's Reputation
In point two, Appellant argues the trial court erred by not allowing Lindsay Rogers to testify about Father's reputation for violence. Appellant contends the evidence was relevant to his defense that he only apologized to Father to convince Father not to harm him. The State argues evidence of Father's reputation was inadmissible because it is irrelevant without a claim of self-defense and there was insufficient foundation for the evidence. The State further argues, even if there was an error, admission of the evidence was not prejudicial.
The trial court's decision must be clearly against logic of the circumstances to be an abuse of discretion. Cofield , 95 S.W.3d at 205. To be admissible, reputation evidence must be founded on events reasonably close in time to the events of the case at hand. Cantrell v. Superior Loan Corp. , 603 S.W.2d 627, 639 (Mo. App. E.D. 1980). In weighing the probative value of evidence against its costs to determine legal relevance, cumulativeness is considered a cost. State v. Graham , 345 S.W.3d 385, 390 (Mo. App. S.D. 2011).
In Appellant's offer of proof for Father's reputation for violence, Rogers testified Father had a reputation amongst her friends for being violent, aggressive, and dishonest. Specifically, she testified that Father mistreated a girlfriend in high school, was a bully in high school, and she heard Father use profane language after someone honked at him on the road. The trial court barred this testimony.
The trial court did not abuse its discretion in declining to allow Rogers' testimony about Father's reputation for violence. The court concluded Rogers' testimony about Father's reputation was either too old to be pertinent-it went back to events that happened when Rogers and Father were in high school in the 1990's-or *908 its prejudicial effect outweighed any probative value because Rogers' testimony about Father's reputation pertained only to his reputation amongst Rogers' friends, who were all also friends of Appellant. This was not an abuse of discretion by the trial court. See State v. Durham , 371 S.W.3d 30, 37 (Mo. App. E.D. 2012) (noting events seven to nine years past were not an adequate basis for admissible character testimony).
Further, Appellant cannot show prejudice. Appellant argued the evidence was relevant to his defense that his apologies to Father were due to his fear of Father since he knew his propensity for violence. The jury heard testimony about the risk Father posed to Appellant from several witnesses. Specifically, the court admitted Appellant's testimony that Father had a reputation for violence in the community, threatened to kill him the night Victim revealed the incident, and that he had seen Father knock a man out. Additionally, Mother testified Father was furious and indicated he might kill Appellant. Rogers testified Father told her he was in his truck with a loaded gun and was going to Appellant's home to kill him. The jury heard ample evidence about Appellant's justifications for fearing Father and the trial court did not abuse its discretion by barring testimony dating to when Father was in high school and testimony about Appellant's friends' opinions of Father. Point two is denied.
III. The State's Reference in Closing Argument to "Monster[s]" in "Dark Capes"
In point three, Appellant argues the trial court erred by allowing the prosecutor to use language in his closing argument allegedly designed to inflame the passions and prejudices of the jury. Specifically, Appellant claims the prosecutor "improperly referred to 'monster[s]' in 'dark capes' that 'walk amongst us.' " The State contends Appellant's description of the prosecutor's closing is inaccurate and the prosecutor's remarks were appropriate common sense remarks. The State further argues Appellant did not preserve this objection and has not alleged or demonstrated resulting manifest injustice.
A prosecutor may argue the evidence and all reasonable inferences from the evidence during closing arguments. State v. Brown , 337 S.W.3d 12, 14 (Mo. banc 2011). The prosecution is not free to make "an ad hominem personal attack designed to inflame the jury." State v. Banks , 215 S.W.3d 118, 121 (Mo. banc 2007). In Banks , the Missouri Supreme Court vacated a conviction where the prosecutor told the jury that the defendant was "the Devil," that "this is Hell," and that "there aren't any angels" as witnesses. Id. at 119. The Court held that the prosecutor may "strike blows, but is not at liberty to strike foul ones." Id. at 121. The Court noted that it would have been acceptable for the prosecutor to say, "the state does not find angels as witnesses in crack houses." Banks, 215 S.W.3d at 121. The problem occurred only when the prosecutor compared the defendant to the non-angelic witnesses, suggesting the defendant was a worse person than the State's witnesses. Id. The principle laid down in Banks that controls this point is that metaphorical language is proper if it is not used in an ad hominem attack against the defendant.
During the State's rebuttal to Appellant's closing argument, the prosecutor said: "Child molesters don't stick out in the community. They don't wear dark monster masks or dark capes. The scariest thing of all is that they walk amongst us and look like everybody else." Appellant objected on the grounds there was no evidence about what child molesters look like.
*909 The trial court judge overruled the objection. Appellant's objection at trial was that the State did not present evidence on what child molesters look like, but Appellant now contends the State used inflammatory language in its rebuttal. Because Appellant did not raise the theory presented on appeal to the trial court, our review is only for plain error. Johnson , 207 S.W.3d at 34, 43.
Appellant argued in closing essentially that he was an upstanding and honest member of society. The prosecutor responded that child molesters are not conspicuously bad-they do not wear "monster masks" or "dark capes." The prosecutor's argument was a reasonable rebuttal to evidence put forward and argued by Appellant. The description of the prosecutor's closing remarks found in Appellant's brief is misleading. The prosecutor did not refer to "monster[s]" in "dark capes" "that walk amongst us." The prosecutor said that child molesters "do not wear monster masks" or "dark capes" when "they walk amongst us." The prosecutor used the word "monster" but did not call the defendant a "monster." The prosecutor's comment was proper because it was a metaphorical way of saying that Appellant's positive qualities shed little light on whether he was guilty. There was no ad hominem personal attack designed to inflame the jury. The trial court did not commit an error, plainly or otherwise. Point three is denied.
Conclusion
For the reasons stated above, we affirm.
Robert G. Dowd, Jr., J. and Mary K. Hoff, J. concur.

We review the facts in the light most favorable to the verdict. State v. Cooper , 215 S.W.3d 123, 124 (Mo. banc 2007)

The Missouri Constitution was amended effective November 4, 2018 with the addition of Article I Section 18(c), which states: "[I]n prosecutions for crimes of a sexual nature involving a victim under eighteen years of age, relevant evidence of prior criminal acts, whether charged or uncharged, is admissible for the purpose of corroborating the victim's testimony or demonstrating the defendant's propensity to commit the crime with which he or she is presently charged. The court may exclude relevant evidence of prior criminal acts if the probative value of the evidence is substantially outweighed by the danger of unfair prejudice." This amendment applies to all trials occurring after its passage, regardless of when the alleged crimes were committed. State ex rel. Tipler v. Gardner , 506 S.W.3d 922, 927 (Mo. banc 2017). This court does not address whether or not this amendment renders Father's testimony admissible because (1) the record is insufficient to determine if Father's testimony constituted evidence of a prior criminal act and (2) the trial court did not abuse its discretion in allowing the photographs based upon the reasons set forth in this opinion.